CHARLES H. VALENTINE, JR., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 29494.)

Court of Claims, March 23, 1950.

*Julius Applebaum* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Arthur W. Mattson* and *Sidney B. Gordon* of counsel), for defendant.

LOUNSBERRY, P. J.  The claimant, then an inmate of Great Meadow State Prison, was assigned to work at the milk-house or barn connected with the prison farm, located outside the prison gate.  On the morning of February 18, 1938, in accordance with the usual routine, the claimant and seven other members of his work gang were assembled to proceed to the barn.  As they were about to leave the prison building, the guard cautioned them, " Be careful men, it is dangerous and slippery."  It was then about 6:15 A.M., and dark.  It appeared that during the night it had been raining and freezing, and was still doing so when the men started out.  The walk and grounds were icy and slippery.

Claimant proceeded cautiously, in company with the guard and the others of the gang, some thirty or forty feet along the concrete walk leading toward the gate, and then slipped and fell, fracturing his left leg.  He was removed to the prison hospital, where traction and later a cast were applied, and where he remained until July 15, 1938, when he was discharged from both the hospital and the prison on parole.  He returned to prison November 1, 1939, for parole violation and was again paroled December 30, 1948.

The fracture healed satisfactorily, but an ulcer, and subsequently varicose veins, developed in the lower left leg, causing claimant much trouble.  Although improved, they were not definitely healed at the time of the trial in October, 1949, despite

many varied treatments and an operation. Claimant attributes these conditions to the fracture and the treatment thereof. ·

The principal question is whether the State was under a duty to take measures, such as sanding or cindering, to render the walk safe for walking. Under the circumstances, and in the light of the decided cases, we think not. Insufficient time for such measures had elapsed and they would have been of doubtful value so long as the raining and freezing continued.

A leading case on the point is *Kelly* v. *Manhattan Ry. Co.* (112 N. Y. 443). There the plaintiff slipped on an icy stairway leading to the defendant's railroad. Sleet and snow had fallen during the night until about 4:00 A.M., and the accident occurred at about 5:30 A.M. In holding the defendant free from negligence, the court said (p. 452): " * * * the failure to throw ashes or sawdust or something of that character upon the steps during the storm cannot be regarded as negligence, because the continuance of the storm would soon render the steps as slippery as before; and it seems to us that culpable negligence cannot be predicated upon the failure to clean off the steps between the time the storm ceased, which was between three and four o'clock in the morning, and the time when the accident happened. So brief a period as that, at such a time in the night, cannot, we think, be regarded as any evidence of a lack of that reasonable care which the defendant was bound to exercise."

The same ruling upon very similar facts appears in *Rusk* v. *Manhattan Ry. Co.* (46 App. Div. 100) and in *Greenstein* v. *City of New York* (273 App. Div. 869) and the subject is reviewed in *Murphy* v. *Hudson & Manhattan R. R. Co.* (180 App. Div, 585). It is significant that all of these cases involve the relationship of common carrier and passenger, where a high standard of care for the safety of the passenger, or intended passenger, is always required.

Other cases asserting the principle that there is no liability for snow and ice conditions while a storm still continues nor until a reasonable time thereafter are *McAuley* v. *United Cigar Stores Co.* (204 App. Div. 356, affd. 236 N. Y. 633) involving the entrance to a store; *Green* v. *Green* (212 App. Div. 381) concerning a social invitee, and *Bressler* v. *Rule Realty Co.* (219 App. Div. 529, affd. 248 N. Y. 619) apparently involving landlord and tenant, where the landlord was in control of the steps where the accident occurred. Numerous cases assert the same principle with respect to the liability of a municipality for snow and ice on public walks, usually with a liberal allowance of time · for the removal of the snow and ice (*Kortlang* v. *City of Mount*

*Vernon,* 129 App. Div. 535 and, also, the cases cited in 5 Warren on Negligence in the New York Courts, § 354, subd. (r), pp. 318, 319).

Further, there are cases holding that a landlord in control of yards and walks adjacent to the leased premises is under no duty toward the tenants with respect to the natural accumulation of ice unless unusually ridgy and bumpy (*Dwyer* v. *Woollard,* 205 App. Div. 546; *Harkin* v. *Crumbie,* 20 Misc. 568), and there is no liability to a church invitee where ice conditions on the church walk are no worse than generally prevailing. (*Schwabl* v. *St. Augustine's Church,* 288 N. Y. 554.)

The foregoing cases establish firmly, we believe, the principle that responsibility for ice conditions arises, at the most, only after the lapse of a reasonable time for taking protective measures and never while a storm is still in progress. It is a commonsense rule arising from the fact that snow and ice conditions are unpredictable, natural hazards against which no one can insure and which in their nature cannot immediately be alleviated. The present case is obviously within the rule. It was still raining and freezing, and even if it had stopped, it would be unreasonable to expect the walks to be sanded and cindered, or the ice removed, at 6:15 in the morning. No evidence was submitted as to the State's notice of the condition, but it is apparent that it must have been short, if any, at such an hour.

We are aware that the claimant had no choice in the matter. This frees him from the charge of contributory negligence, but not from the operation of the principle with regard to ice conditions. As the foregoing cases well illustrate, the principle applies regardless of the relationship of the parties. We know of no reason for applying a higher or different standard to the State than applies to common carriers or proprietors.

On the trial the claimant made some effort to show that the subsequent condition of claimant's leg resulted from too much constriction while in traction. The proof of the connection is none too satisfactory, but on our view of the case the point is immaterial. If it is made simply to connect the complications with the original injury, the State is no more liable for the one than for the other. If it is made to introduce an independent intervening act of negligence, namely, improper care on the part of the State, it fails both for want of pleading and for want of proof. The claim contains no allegation of improper care of the injured leg, and it is significant that in his briefs the claimant asserts that " It is not necessary to charge malpractice against the prison physicians  *  *  * ", and that " It does

not make the slightest difference whether the treatment given by the physicians at the Great Meadow Prison Hospital was proper or improper." Obviously claimant has elected to stand on the supposed original negligence of the State with regard to the icy walk, and he must also fall therewith.

In addition, the record is devoid of any medical evidence or any other credible evidence of improper care. Neither the testimony of claimant's physicians nor the hospital record supports any such accusation, and the claimant's own nonexpert testimony, even if wholly accurate, is certainly an insufficient basis for a finding of malpractice.

For these various reasons the claim must, therefore, be dismissed.

There remain some incidental points. The claimant took exception to our refusal to direct the production of the report of the physical examination of the claimant made by the State's physician. It is well settled that a plaintiff is not entitled to a copy of such a report secured by a defendant on his own motion, at his own expense, for purposes of preparation for trial. (*Kelman* v. *Union Ry. Co.*, 202 App. Div. 487; *Feinberg* v. *Fairmont Holding Corp.*, 272 App. Div. 101; *Callan* v. *Adams*, 176 Misc. 292; *Di Laura* v. *State of New York*, 275 App. Div. 639.) It follows that the State cannot be compelled to produce such a report upon the trial.

Claimant offered in evidence two photographs marked " Claimant's Exhibit No. 34 " for identification, to which the Attorney-General objected. The decision of the court was reserved. We now deny the offer on the grounds that the claimant's leg was exhibited to the court, and we do not believe that these photographs, which were taken within two or three days of the trial, could serve any useful purpose. The claimant may have an exception.

The claimant offered in evidence claimant's Exhibits 3 and 4 for identification to which the Attorney-General objected, and on which the court reserved decision. The said exhibits 3 and 4 are now admitted in evidence, and marked " Claimant's Exhibits 3 and 4 ". The State may have an exception.

Findings of fact and conclusions of law in accordance with the above opinion may be submitted within fifteen days from the date hereof, otherwise this memorandum will be considered the decision herein.

Let judgment be entered accordingly.