## NOBLE et al. v. STEPHENS et al.

### No. 6622–A.

District Court, Alaska.
First Division, Juneau.
Nov. 26, 1952.

Faulkner, Banfield & Boochever, Juneau, Alaska, for plaintiffs.

William L. Paul, Jr., Juneau, Alaska, for Stephens.

Joseph A. McLean, Juneau, Alaska, for American Surety Co.

FOLTA, District Judge.

By this action plaintiff seeks to recover damages from the defendant and his surety for breach of contract for the construction of a house, the cost of which was financed by the plaintiff bank.

When the defendant's bid was accepted July 14, 1950, it was orally agreed that, pending the grant of a loan to the plaintiff and the furnishing of a bond by the defendant, work would immediately commence on the concrete basement, the cost of which, in case the loan or bond could not be obtained, would be paid for on a quantum meruit basis. Athough the loan was obtained and the parties reduced the agree-

ment to writing on October 5th, the defendant had not furnished a bond. In the meantime it appears that employees of a subcontractor had not been paid and that the plaintiff was dissatisfied with the lack of expedition on the part of the defendant and concerned over his failure to obtain a bond and, hence, the plaintiff rendered some assistance in obtaining a bond—facts which the defendant surety contends were material and were fraudulently concealed and, hence, argues that it was discharged from liability. This contention will be dealt with later. The bond was finally issued on October 9, 1950. But it appears that the defendant did not prosecute the work diligently. There were frequent interruptions and delays for which no adequate reason was given. Lack of ready cash on the part of the defendant resulted in the execution of the written agreement of November 8, 1950, changing the mechanics of the work progress payments. Work was discontinued for the winter and not resumed until April 1951, when some rather serious errors and defects in the work done were discovered. Little was done thereafter. On July 2d, the plaintiff made a demand on the defendant to resume work and notified the surety. On July 16th, the plaintiff, concluding that the job had been abandoned, terminated the contract and notified the surety. No acknowledgement of these letters was made by the surety, but it requested certain information from the plaintiff, including an estimate of the cost of completing the job, and also requested the defendant to refrain from doing any further work under the contract. On September 24, 1951, the plaintiff informed the surety as to his damages and that the cost of completing the job was estimated at $15,700 and was told to arrange for its completion. The surety did nothing further, in consequence of which at the time this action was commenced on July 1, 1952, all but $40 of the contract price had been spent; the cost of completion was estimated at $11,300; the plaintiff had spent $2,219.46 of his own funds and incurred obligations in the sum of $4,265.08 in connection with the purchase of material and labor

done to minimize the damages; and plaintiff testified that because of the delay in the performance of the contract, he was further damaged in the sum of $1,767.03 for rental of living quarters and for storage and insurance of his furniture.

The defendant contends that the contract of July 14, was breached by plaintiff's failure to obtain a loan and that the contract of October 5, is without consideration because it merely obligated the plaintiff to do what he was already required to do under the original contract; and, in the alternative, that the contract was breached by plaintiff's continual interference with the performance of work thereunder, which breach he adopted on or about May 15, 1951 and abandoned the job.

The defendant surety contends that the alteration of the contract was material and prejudicial, thereby discharging it from liability, and that there was a fraudulent concealment by plaintiff of material facts in connection with the assistance rendered the defendant in obtaining a bond. Since the first contention was disposed of adversely to the defendant's surety on its motion to dismiss, it will not be discussed here.

A singular feature is that the work progress payments appear to have greatly exceeded the value of the work, but this point is not strenuously argued, although it is mentioned in the surety's brief. In view of the derelictions referred to, however, the Court cannot find that the plaintiff should have been aware of the disparity between the value of the work done and the payments made, particularly since the cost of remedying the defective workmanship was shown to be, as is usually the case, wholly disproportionate to the result. Such defects account, at least in part, for the unwillingness on the part of the builders to submit bids for completion of the job.

The oral contract of July 14 provided for compensation on a quantum meruit basis, and, hence, differed materially from the written contract of October 5. There would, therefore, appear to be no basis for the contention of absence of consideration. I also find that the acts of the plaintiff, which the defendant asserts

constituted undue interference with his performance of the contract, were done in the reasonable exercise of his right of inspection, from which I conclude that the defendant was not warranted in treating plaintiff's conduct in that respect as a breach of the contract.

■ From the facts recited, which I find, I conclude that the contract of October 5, 1950, was valid and that the plaintiff was warranted in treating the job as abandoned and in terminating the contract on July 17, 1951.

■ Turning to the contention of the defendant surety, I find that it has failed to establish, by clear and convincing proof, that the plaintiff fraudulently concealed or misrepresented material facts in connection with the defendant's application for a bond. It appears that it not only made no inquiry as to the state of affairs between the plaintiff and the defendant, but that it had bonded the defendant before in connection with similar contracts, and had not, in the instant case, even bothered to procure a copy of the contract. Moreover, with knowledge of the facts, it requested the defendant to refrain from resuming work and asked the plaintiff to obtain bids for the completion of the job as well as to submit other information to it, which warrants the inference or recognition of its liability. Indeed, the surety never denied its liability in conferences with the plaintiff or after his repeated demands that it proceed with the performance of its contract. These facts suffice to estop the surety from denying liability.

I find that the plaintiff spent and incurred liability for $6,484.54 in connection with the purchase of materials and performance of labor and that such materials and labor were reasonably necessary, except the expenditure of $25 by the plaintiff for the license of the defendant as contractor. I further find that the delay in completing the house from May 15, 1951 to December 31, 1952, cost the plaintiff in rentals, interest, storage charges and insurance on furniture $1,767.03, and that the cost of completing the job will be $11,300. Adding to this the $17,500 paid the defendant under the contract and subtracting the contract price of $17,540 results in total damages of $19,486.57, for which plaintiff may have judgment.