HARTFORD ACCIDENT & INDEMNITY COMPANY, Appellant, *v.* MAXIM KRANZ et al., Respondents.

Third Department, April 29, 1959.

*William E. J. Connor, Morris Millman* and *John G. Connor* for appellant.

*Ainsworth, Sullivan, Tracy & Knauf* (*William J. Murphy* and *Charles B. Sullivan* of counsel), for Maxim Kranz, respondent.

*Halter & Sullivan* for Samuel Leto, respondent.

HERLIHY, J. In June, 1955, the defendant Kranz was awarded a State contract for the construction of 8.71 miles of public highway from Redwood to the St. Lawrence County line. He

thereafter agreed with the defendant Leto for excavation and drainage work amounting to approximately $300,000 providing he (Leto) obtained a surety bond. An application was made to the Albany office of the plaintiff insurance company and after some discussion Leto was advised that the plaintiff would not undertake a bond in the amount requested but might be interested to the extent of $200,000. In the presence of Wilson and Geer, in charge of the Albany office, he telephoned Kranz concerning the conference. Thereafter the defendants agreed to an excavation contract in the amount of $195,588.75 and the plaintiff issued a bond for 50% thereof. The following day (July 21) defendants entered into a second contract for drainage in the amount of approximately $150,000 and for which no bond was required. The defendant Leto, being unfamiliar with the requirements of a contract of this size, including a bond, was aided by one Leonardi known to the plaintiff and the defendant Kranz.

When Leto returned to plaintiff and applied for a lesser amount, no inquiry was made concerning the change of plans and eventually plaintiff bonded the contract.

In May of 1956 Leto was having difficulties in fulfilling the contract and Kranz made advances to him with the knowledge and consent of the plaintiff. In June the plaintiff served notice upon the defendants that it was rescinding its bond due to fraudulent concealment of vital and important facts, to wit: the second contract for drainage between the defendants.

The record establishes that in October, 1955, representatives of the plaintiff went to the job and ascertained that there existed a second agreement between the defendants for additional (drainage) work. A communication from Geer of the Albany office to the surety department of the home office on November 7, 1955, stated in part: '' Although it is not yet under way to any major degree, Leto has taken on another job for Kranz. It consists of more work at the same site and is approximately $150,000.00. It is unbonded. * * * At this time I would opinion that we have just about the same size work program which we did when the bond was originally under consideration.''

We are satisfied that the record failed to disclose any fraudulent concealment. He who claims fraud must prove it and it was plaintiff's obligation to prove '' representation, falsity, *scienter,* deception and injury ''. (*Ochs* v. *Woods,* 221 N. Y. 335, 338; *Reno* v. *Bull,* 226 N. Y. 546, 550.)

In *Howe Mach. Co.* v. *Farrington* (82 N. Y. 121) the defendant gave a bond to the plaintiff company to indemnify Davis, one of its salesmen, for past and future indebtedness. The court

said (p. 127): " The defendant had no communication with the company before signing it. The bond in terms referred to an existing indebtedness of Davis. The defendant made no inquiry of the company to ascertain the particulars, and the company made no representation. If the defendant deemed it material to be informed of the origin, nature or extent of the existing indebtedness, he should have inquired of the company before executing the bond. The company was under no duty to seek the defendant and make the disclosure. It was bound to act with good faith toward the defendant; but to hold the surety discharged by the omission to advise him of the particulars of the previous transactions with Davis, in the absence of any inquiry on the subject, would establish a rule which would make instruments of the character of the one in question of comparatively little value."

In *Western New York Life Ins. Co.* v. *Clinton* (66 N. Y. 326) a bond was issued conditioned on the appointment of the principal Clinton, as agent of the plaintiff, to procure life insurance, collect premiums and pay to the plaintiff all money belonging to it. Two agreements had been executed between the parties. In one of them the plaintiff appointed Clinton as an agent to procure applications and insurance and to forward premiums and renewals to the plaintiff. By a second instrument, plaintiff allowed Clinton a commission upon moneys collected on behalf of the insurance agency. In an action to recover on the bond, defendant contended it only covered the first agreement. In denying this contention the court said (pp. 331–332): " Nor does it relieve the defendants from liability upon the bond, because the sureties had no knowledge of the second agreement until after the execution of the bond. Even if they were misled by the principal, at whose request the bond was executed, as to the character and extent of the obligation assumed, it is no valid defense to this action, unless it appears that the plaintiff was a party to the fraud practiced upon the defendants. (*Casoni* v. *Jerome,* 58 N. Y., 315, 321; *McWilliams* v. *Mason* 31 id., 294.) The position that the obligee in a bond is bound to seek out the sureties and explain to them the nature and extent of their obligation at the point of losing the security, or that he is to be held responsible for the fraudulent representations or concealment of the principal of any of the facts, is somewhat novel, and is not upheld by any adjudged case. It is the duty of the sureties to look out for themselves and ascertain the nature of the obligation embraced in the undertaking, and any other

rule would not only work serious inconvenience, but render securities of this character of but little, if of any, value.''

In *Larmore* v. *Peoples State Bank* (206 Ind. 66, 75) the court said: ''It is well settled that one who is asked to become a surety must exercise reasonable diligence to know the circumstances of the transaction, and the condition of his principal, and *if he is put upon his guard by circumstances surrounding the transaction, and can upon reasonable inquiry ascertain all of the facts necessary to shield himself from loss, he is bound to make the inquiry.* He must not suffer himself to become an indolent victim of fraud.'' (Emphasis supplied.)

The record sustains the lower court finding that there is no evidence of an intent on the part of Kranz to perpetrate a fraud upon the plaintiff. On one occasion he called the representatives of the plaintiff to ascertain if a bond was to be issued and was advised that it was being prepared. At no time did plaintiff or its agents make any inquiry of Kranz as to the change of plans from the original application. It was certain someone must do the drainage work. When its representatives went to the job in October, they were informed as to the additional work being done by Leto and made no objection or rescission. Under such circumstances, there was a failure of proof as to fraud by concealment or deceit. With the opportunity to obtain knowledge of the facts, one cannot sit idly by to reap the harvest, if plentiful, but in the event of scarcity, charge fraud. (*Magee* v. *Manhattan Life Ins. Co.*, 92 U. S. 93.)

Following the inspection trip in October and the communication between Albany and the home office as to '' another job '', there were conversations between its representatives and Leto concerning the possibility of bonding the second contract. In any respect, the plaintiff did nothing but continued to acquiesce and later (May, 1956) consented and authorized Kranz to make advance payments for Leto; inquired if additional money might be borrowed and did other affirmative acts.

In *Seglin Constr. Co.* v. *Columbia Cas. Co.* (239 App. Div. 803, 804) the court said: '' The bond was written on May 20, 1930, and the agreement of Cryer was made on May 15, 1930. On December 20, 1930, the surety company, in a letter, manifested knowledge of the ' private arrangements with Mr. Cryer.' The surety company proceeded with such knowledge of that arrangement without then acting thereon, on the theory of fraud, which it now advances. It may not at this time be heard. (*Saratoga & Schenectady R. R. Co.* v. *Row,* 24 Wend. 74, 76.) '' (See, also, *Pryor* v. *Foster,* 130 N. Y. 171, 175; *Noble* v. *Stephens* [*Alaska*], 108 F. Supp. 217, 219.)

In September of 1956 after disclaiming liability and after the commencement of this action, plaintiff's agent obtained a confession of judgment against Leto for unpaid premiums upon its bond. The bond cannot be void and plaintiff still be entitled to a premium thereon. (*McClare* v. *Massachusetts Bonding & Ins. Co.*, 266 N. Y. 371, 376.)

The judgment should be affirmed.

FOSTER, P. J., BERGAN, COON and REYNOLDS, JJ., concur.

Judgment affirmed, with costs to the respondents.