Van Voorhis, J.
At the time of the accident in the early morning hours of January 31, 1956, plaintiff was a fireman employed by the Fire Department of the City of New York driving a car owned by the department. This car, a 1953 four-door Ford sedan, which was painted red, was equipped with a bell, a siren, two red fender lights, and an oscillating Mars light on the roof. Acting Battalion Chief Harold Toback, who accompanied plaintiff, was returning with him to the Battalion Headquarters after a fire.
Plaintiff testified that when he was proceeding west on Bergen Street before reaching its intersection with Schenectady Avenue, the traffic light changed to green when he was 50 feet from the corner. Defendant, Arnold Rennert, on the contrary, testified that the light was against plaintiff and in defendant’s favor when they collided at the intersection. Because of the accident, plaintiff claimed a compressed nerve injury in his cervical spine, necessitating the use of a cervical collar, as a result of which he was retired from the Fire Department for disability. The verdict of the jury was for the defendants.
Plaintiff testified on cross-examination that he had been with, the Fire Department for 18 years and that he would have been *206 eligible for normal retirement in about two years after the accident at half pay. Defendants were permitted on cross-examination to develop that, because of the accident, plaintiff applied for and received immediately a disability retirement pension at three-quarters pay, or a larger pension sooner paid than he could have had without the accident. Plaintiff’s counsel objected throughout to this sequence of questioning and, in particular, objected to the crucial question as to retirement at three-quarters pay. He also moved unsuccessfully at the close of the trial to strike such evidence from the record. He argues that the jury may have come to the conclusion that the difference in the amount and time of commencement of the pension that plaintiff is receiving as a result of the accident and what he would have received on normal retirement would more than compensate him for his damages and may, therefore, have rendered a verdict in favor of defendants.
In most jurisdictions the damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partly indemnified for his loss by insurance effected by him and to the procurement of which the wrongdoer did not contribute (13 A. L. R. 2d 355). In Standard Oil Co. v. United States (153 F. 2d 958, affd. 332 U. S. 301) it is stated that in the United States the prevailing rule seems to be that an injured person may recover for wages lost and medical expenses incurred during his incapacity even though such amounts were supplied by insurance or gratuitously. In Capital Prods. v. Homer (252 F. 2d 843) the court held that the defendant was not entitled to show in mitigation of damages that a fireman had secured medical retirement from the Fire Department at half pay under an established pension system.
For these reasons we consider that evidence concerning the retirement of plaintiff for disability at three-quarters pay was inadmissible and without probative force to affect this cause of action.
For the same reason, plaintiff claims that it was erroneous to have permitted defendants to show that plaintiff was a member of a health insurance plan (HIP). On direct plaintiff testified that he had received medical treatments at the Eastern Parkway Medical Center. Nothing was asked or testified to on direct examination with respect to any health insurance plan. Defense *207 counsel, as he did with respect to the pension, was permitted on two occasions, over plaintiff’s objection, to ask whether he was a member of the HIP plan to which he answered that he was. The overruling of those objections was erroneous.
Defendants contend that, since they were not found guilty of negligence, these collateral source issues were never a topic of the jury’s deliberation, and hence their submission to the jury could not have been prejudicial. On this aspect of the ease we agree with plaintiff’s position that they may well have considered that plaintiff had sustained no damage, especially in view of the acceleration and increase in the amount of payments of plaintiff’s pension, and may have decided the case on the basis that plaintiff was not harmed rather than on questions of negligence and contributory negligence.
Defendants contend that plaintiff opened the door to the introduction of evidence regarding his pension and HIP insurance. There is no basis for such a contention regarding HIP, although the plaintiff’s testimony that on account of this accident he was “ put out ” of the Fire Department lent some color to a contention that plaintiff had opened the door to defendants to show the true facts respecting what bearing the accident did have upon his pension rights. Since a new trial must be had in any event, for other reasons, it is unnecessary to decide at this point whether the door was opened, but it is enough to point out that on the retrial the plaintiff should refrain from describing what occurred in that manner. It is sufficient if he testifies that he did not thereafter work in the Fire Department, which is a more accurate and less provocative manner of describing what actually occurred. He should refrain from testifying in words tending to indicate that he suffered some loss of rights in his connection with the Fire Department other than his loss of pay during his remaining tenure.
The trial court erred, furthermore, in instructing the jury with respect to the effect of the accident on plaintiff’s pension. The jurors were told correctly that they were not to consider moneys received by him as a pension which were not to be deducted from any award for loss of earnings, but added, at the request of defendants: “ I respectfully request your Honor to charge the jury that if the jury finds that in applying for retirement from the Fire Department the plaintiff was motivated by *208 the fact that basing his application on the alleged injury received in the accident, his retirement would be on the basis of three-quarters of the regular pay as against what he would receive on normal retirement, namely fifty percent of his regular pay, then the jury may find that it was a continuing motive that carried into the claims of personal injuries alleged in this case. ’ ’
Plaintiff’s counsel excepted to the above instruction. Plaintiff’s motivation in applying for a pension had no bearing on the issues in this case. The jurors are likely to have been confused by the instruction, first, that they must not consider plaintiff’s disability pension in mitigation of damages, but that they might consider his motives in making the application for a pension. The whole subject should have been removed from the jnry.
Another error which plaintiff contends occurred at the trial consists in the exclusion of the testimony of Harold Toback, the Battalion Chief who was a passenger in plaintiff’s automobile, in the Magistrates’ Court on the trial of the defendant Arnold Rennert. Rennert was tried for having violated the Traffic Regulations of the City of New York, requiring drivers of ordinary vehicles to yield the right of way to an emergency vehicle. Toback testified with regard to the facts of the collision, and was cross-examined by Rennert’s counsel. Plaintiff attempted to introduce a transcript of this testimony into evidence under section 348 of the Civil Practice Act on the ground that Toback had since become a nonresident of New York State, having moved to Arizona after the accident. The exclusion of this transcript has nothing to do with whether Rennert was convicted or acquitted of the charge, and its correctness depends upon whether Toback’s former testimony was admissible due to the circumstance that he had become unavailable as a witness. The requirement of section 348 of the Civil Practice Act that the subject matter and the parties to both litigations shall be the same is to insure that the party against whom the testimony is offered had an adequate opportunity to cross-examine the witness (5 Wigmore, Evidence, § 1388; 142 A. L. R. 696; Richardson, Evidence [8th ed.], § 279; Fisch, New York Evidence, §§ 935, 936; Matter of White, 2 N Y 2d 309, 315-317). Rennert’s counsel had the opportunity and the inducement to cross-examine Toback concerning the same aspects of the aeci *209 dent which were relevant upon this trial. It does not matter that in one instance it was a criminal action and the other a civil action, provided that the issue was so nearly identical that the cross-examination in both instances would normally cover the same field (Travelers Fire Ins. Co. v. Wright, 322 P. 2d 417, 422 [Okla.]). Schindler v. Royal Ins. Co. (258 N. Y. 310) and Walther v. News Syndicate Co. (276 App. Div. 169) are not directly in point inasmuch as they relate to the effect on a civil action of convictions in the criminal courts, but both of them indicate, whatever other questions may have been involved in them, that the distinction between civil and criminal actions is not necessarily controlling on a point of this nature.
The proof that Toback had taken up his residence in Arizona, so as to render his testimony admissible under section 348 of the Civil Practice Act, was erroneously held to be insufficient. This proof consisted of letters written by Toback in Arizona and letters sent to him in Arizona. They were admitted in evidence, over defendants’ objection, but only for the purpose of showing Toback’s mailing address. The contents of the letters were excluded. The court likewise excluded a telephone conversation between plaintiff and Toback, in which Toback told him that he was a resident of Arizona. A card from the files of the New York City Pension Bureau showing an Arizona mailing address for Toback, offered by plaintiff, was excluded. We think that not only should the testimony of Toback in the Magistrates’ Court have been received over the objection that there was not an identity of parties, but also that this evidence respecting Toback’s nonresidence was admissible and had probative force under these limited circumstances to establish that he had departed from the State with intention not to return (5 Wigmore, Evidence, § 1414, pp. 189-190; 6 Wigmore, Evidence, § 1725; Richardson, Evidence, §§ 270-271; Matter of Newcomb, 192 N. Y. 238; People v. Barber, 144 Cal. 705).
One other point needs to be mentioned, namely, the question of whether plaintiff was guilty of contributory negligence as matter of law. It has been argued that, since he testified that he “looked” to his “right and straight ahead” and “saw nothing ’ ’ immediately before the impact, his testimony was incredible as matter of law (Knapp v. Barrett, 216 N. Y. 226). It may well be that in the ordinary case such testimony would *210 be construed as barring recovery on the ground that the person so testifying either saw the approaching vehicle on the intersecting street or did not really look to apprehend the possibility of danger. If it be assumed that plaintiff did see the Rennert automobile approaching on the intersecting street, or that, not seeing it, he is chargeable with knowledge of its presence, it would not follow that this plaintiff is guilty of contributory negligence as matter of law if he had the right of way- and could, in the exercise of reasonable care, have assumed that the defendants ’ vehicle would have conceded the right of way if the law so required. That, under the circumstances of this case, was a question of fact, even though whether plaintiff did have the right of way is a question of law (Ward v. Clark, 232 N. Y. 195, 198). In the case cited the opinion states: ‘‘A right of way, like a burden of proof, will establish precedence when rights might otherwise be balanced.” It is for that reason that, even though it be established as matter of law that one party had the right of way over the other, the issue of negligence or contributory negligence may still be a question of fact inasmuch as right of way rules are seldom absolute and are usually factors entering into the general context of reasonable care.
That plaintiff did have the right of way appears from the Traffic Regulations of the City of New York, relevant to the question of negligence and contributory negligence, which were read to the jury by the court. In substance these provide for certain privileges to “ authorized emergency vehicles ”, the definition of which includes a ‘6 fire department vehicle * * * returning to unmanned fire quarters.” The car driven by plaintiff came within this definition, since the Fire Battalion Chief was absent from the fire house which was “ unmanned.” Among the privileges extended to the “ authorized emergency vehicle ’ ’ under the special provisions of the section is the right to “ proceed past a red or stop signal * * *, but only after slowing down as may be necessary for safe operation ”.
Section 80 of the Traffic Regulations imposes a duty upon drivers of ordinary vehicles which must be observed at the immediate approach of authorized emergency vehicles. The driver of an ordinary vehicle must yield the right of way and immediately drive to a position parallel to and as close as possible to the nearest edge or curb when the driver of an authorized *211 emergency vehicle is giving audible signal by siren, exhaust whistle, or bell. All of this applies only if plaintiff did not have the green light.
Counsel for plaintiff requested the court to charge "that violation of an ordinance is evidence of negligence ”. The court refused ‘ ‘ to charge other than as already charged. ’ ’ The court did not charge that a violation of the traffic regulations could be considered as some evidence of negligence. Defendants contend that the charge was adequate and that plaintiff did not except to it. When the court asked whether there were any exceptions or requests to the charge, plaintiff’s attorney stated: “No exceptions, Judge.” But to this he added the request above mentioned, saying: “ I may have missed it, but would your Honor charge the jury that violation of an ordinance is evidence of negligence? ” Plaintiff was entitled to that instruction (Major v. Waverly & Ogden, 7 N Y 2d 332, 336).
For the reasons stated a new-trial should be granted, with costs to plaintiff to abide the event.
Chief Judge Desmond and Judges Dye, Fuld, Froessel, Burke and Foster concur.
Judgment reversed and a new trial granted, with costs to abide the event.