**Mary P. KLEIN and William Klein, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 69, Docket 28989.**

United States Court of Appeals Second Circuit.

Argued Oct. 14, 1964.

Decided Dec. 10, 1964.

---

Orenstein, Arrow & Lourie, New York City (Miles J. Lourie, New York City, of counsel and on the brief), for plaintiffs-appellees.

Robert M. Morgenthau, U. S. Atty., Southern District of New York (Allen M. Taylor, New York City, of counsel; Benjamin H. Siff, New York City, on the brief), for defendant-appellant.

Before WATERMAN, MOORE and SMITH, Circuit Judges.

WATERMAN, Circuit Judge.

Plaintiffs, husband and wife, brought suit against the government under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) et seq., for personal injuries suffered by the wife. The case was tried before Judge Murphy, sitting without a jury, in the United States District Court for the Southern District of New York. In a memorandum opinion Judge Murphy granted judgment for the plaintiffs and awarded them $28,804.02. The government appeals, claiming that it was not liable for negligence and that the award was too large. We affirm the court below on both points.

The district court made the following findings of fact: The government owned a housing development in Hyde Park, New York, in which the plaintiffs were tenants. In the early evening of January 7, 1961, the wife slipped on a patch of ice that had formed on a concrete walk within the development, "and landed on her rump, causing her severe injuries." January 7, 1961, was a sunny day, with the temperature near the 50's. Throughout the day snow from a previous storm was melting which caused the

walk to become sloppy. Toward evening the temperature fell to below 32°, and ice formed on the concrete section of the walk upon which the wife subsequently fell. This particular slab was depressed two or three inches below the normal surface of the walk. Nothing had been spread on the slab to provide better traction, nor was the area in which the accident occurred adequately illuminated.

■ The government does not challenge any of these findings of fact. Instead, it argues that under the applicable law a landlord owes no duty to tenants to protect them, while traversing his walkways, from danger arising from natural accumulations of smooth ice, from icy conditions of which he has no notice, or from a failure to illuminate transient patches of ice. Of course the applicable law is the law of New York, the state in which the government's alleged acts of negligence took place. Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

■■ Under New York law, a landlord has a duty to his tenants to use reasonable care in keeping common passageways safe for their use. This duty, however, does not extend to "the natural accumulation of ice unless unusually ridgy and bumpy * * *." Valentine v. State, 197 Misc. 972, 95 N.Y.S.2d 827, 830 (Ct.Cl.1950), aff'd, 277 App.Div. 1069, 100 N.Y.S.2d 567 (1950), citing Dwyer v. Woollard, 205 App.Div. 546, 199 N.Y.S. 840 (1923), and Harkin v. Crumbie, 20 Misc. 568, 46 N.Y.S. 453 (Sup.Ct.1897). The wife admitted that the ice on which she fell was "smooth like glass."

■■ On the other hand, under New York law, if the landlord is guilty of affirmative negligence in causing the accumulation of ice, he can then be held liable even though the ice is smooth. For example, see Jankowsky v. Brown, 177 App.Div. 602, 164 N.Y.S. 303 (1917), in which the landlord washed slush off his front steps with hot water which then froze into a thin icy glaze. This rule is related to the general principle that:

> "A lessor of land who, by purporting to make repairs thereon while the land is in the possession of his lessee or by the negligent manner in which he has made such repairs has * * * made the land more dangerous for use, is subject to liability for bodily harm caused thereby to the lessee * * *" Restatement, Torts § 362 (1934).

In the present case, however, the district court did not find that the government had caused the ice to form by the way in which it cleaned the walk of snow or caused it to form by any other positive acts of negligence, but only found that the government had failed to keep the concrete sections of the walk level.

Nevertheless, plaintiffs maintain that their suit comes within the rule of New York law stated above. They rely upon Epner v. Rhulen, 8 A.D.2d 646, 184 N.Y.S.2d 910 (1959), another decision holding the property owner guilty of "affirmative negligence." In that case, defendants had piled snow in such a way that melting water drained into a saucer-like depression in their sidewalk while the unmelted snow served as a dike to hold the water in place. As we read that opinion, however, defendants' negligence arose from the careless way in which they had piled the snow, not their failure to repair the depression in the sidewalk. We take the same view of Zahn v. City of New York, 299 N.Y. 581, 86 N.E.2d 105 (1949), another case cited by the plaintiffs. Any other interpretation would perplex further the already perplexed distinction between misfeasance and nonfeasance.

■■ A New York landlord may also be held liable for accumulations of ice, even though smooth, if they are promoted by a dangerous condition which the landlord allows to persist. For example, see Clapper v. Zubres, 261 App.Div. 850, 24 N.Y.S.2d 377 (1941), aff'd, 285 N.Y. 770, 34 N.E.2d 914 (1941), in which melted snow was permitted to drip from a porch roof onto the front steps

of the house. This rule is likewise in accord with a general principle of tort law, that:

"A possessor of land, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee * * * for bodily harm caused to [him] by a dangerous condition upon that part of the land retained in the lessor's control * * *." Restatement, Torts § 360 (1934).

This is the basis of the government's liability for failing to keep the concrete sections of the walk level.

The government relies on Gibson v. Prudential Ins. Co., 258 App.Div. 740, 15 N.Y.S.2d 100 (1939), appeal dismissed, 283 N.Y. 647, 28 N.E.2d 43 (1940), in which the court held that a depression in a sidewalk about one foot square and from one-half to one inch deep, in which water had accumulated and frozen, did not constitute a "dangerous condition." To the same effect, see Lynch v. O'Rourke Realty Corp., 2 A.D.2d 851, 155 N.Y.S.2d 847 (1956), aff'd, 3 N.Y.2d 957, 146 N.E.2d 788, 169 N.Y.S.2d 30 (1957), another decision of the same court cited by the government. We fail to apprehend, however, how a rule in cases concerning such small shallow depressions can govern a case involving an entire slab of concrete lowered from two to three inches.

■ In the present case, the district court impliedly found that the depressed slab constituted a dangerous condition in promoting the accumulation of ice. Banked by the adjacent slabs and the ground on either side, the depressed slab would form a trough for gathering melted snow during the inevitable winter thaw. When the temperature fell again, as it was bound to do, the trapped water would congeal into a sizable sheet of ice. In the light of these circumstances, we cannot say that the finding of the district court that a dangerous condition existed was a clearly erroneous finding.

■ Even though a dangerous condition existed, the plaintiffs, however, must show that the landlord had sufficient notice thereof so as to have had a reasonable opportunity to remedy the condition. In the present suit, the government argues, this means a notice of the very ice on which the wife fell, and in support of the argument it cites in particular Schwabl v. St. Augustine's Church, 288 N.Y. 554, 42 N.E.2d 16 (1942), and Caligurie v. Schreck's Iron & Metal Corp., 8 App.Div.2d 991, 188 N.Y.S.2d 697 (1959). There was no direct proof of such notice but, on the other hand, in none of the cases cited by the government was there a pre-existing continuing dangerous condition underlying the accumulation of ice.

■ Where such a pre-existing condition is present, the landlord may be liable if he only has sufficient notice of the probability that ice will accumulate there in the future. For example, see Hoag v. Williamsburgh Sav. Bank, 75 App.Div. 306, 78 N.Y.S. 141 (1902), in which the landlord allowed water to drip onto the floor of a hallway where the temperature was kept at about the freezing point. This rule is in harmony with the general principle that:

"An intervening operation of a force of nature without which the other's harm would not have resulted from the actor's negligent conduct prevents the actor from being liable for the harm, [only] if

(a) the operation of the force of nature is extraordinary, and

(b) the harm resulting from it is of a kind different from that, the likelihood of which made the actor's conduct negligent."

Restatement, Torts § 451 (1934).

■ In the present case, the district court apparently accepted the testimony of the plaintiffs that the slab had been depressed for at least two months before the accident. There was no evidence that the government had actual notice of the depression in the walk, but it

would not appear unreasonable to hold that a two months' period was a long enough period of time to charge the government with having acquired constructive notice thereof. Moreover, the district court found that the government did know on January 7, 1961 that in the evening of that day the water from the snow, melted during the day, would freeze and become ice. Though the record does not disclose that the government on that particular day had actual knowledge of this seasonal recurrent occurrence, we have no doubt that a Hyde Park, New York landlord ought to be charged with the knowledge that the temperature in early January would at times fluctuate around the freezing point, and that if snow is on the ground it is likely that it would melt during the day and likely that the melted snow-water would freeze into ice after sundown.

■ With the depressed slab on the one hand and the freezing water on the other, it was foreseeable that they would combine to cause an accumulation of ice. See Epner v. Rhulen, 8 A.D.2d 646, 184 N.Y.S.2d 910 (1959). Furthermore, the government should have been aware of this formula for mischief well in advance of the accident, for all the necessary facts were at its disposal at least two months beforehand. Thus we conclude that, under the circumstances, the government had sufficient notice of the dangerous condition on its premises to allow it time to contrive a remedy.

■ The obvious remedy would have been to raise the depressed slab. Barring that, the government was obliged constantly to be on guard, either to prevent ice from forming on the slab, or, once ice had accumulated, immediately to treat it. As the government took none of these precautions, it breached its duty of exercising reasonable care for the safety of its tenants. Accordingly we affirm the holding of the district court that the government was liable to Mrs. Klein for its negligence. In view of this result, it is unnecessary for us to decide whether the government had the additional nighttime obligation of illuminating the area of the accident.

We turn now to the claim that the court's award was too large.

■ The district court found that the wife lost 645.6 hours of employment as a result of her accident; and that, pursuant to a sickness and disability plan, her employer paid her a full salary while she was away from work. The court ruled that this collateral compensation did not preclude the wife from suing the government for lost wages, and accordingly awarded her $1,638.82. The government argues that the wife should have been barred by the benefits she received from suing for lost wages. This contention also must be dealt with according to New York law.

The government relies on Drinkwater v. Dinsmore, 80 N.Y. 390 (1880), in which the Court of Appeals held that when a plaintiff in a personal injury action sues for lost wages, the defendant has a right to show:

"* * * that [the plaintiff] was under such a contract with his employer that his wages went on without service, or that his employer paid his wages from mere benevolence. In either case, upon such showing, the plaintiff could not claim that the defendant's wrong caused him to lose his wages, and the loss of wages could form no part of his damage." 80 N.Y. at 393.

The same court has recently held that "Although decided more than 80 years ago, the Drinkwater case has continuously been and still is recognized as the prevailing law of this State." Coyne v. Campbell, 11 N.Y.2d 372, 374, 183 N.E. 2d 891, 230 N.Y.S.2d 1, 2 (1962).

■ Nevertheless, last term we concluded that only half of the Drinkwater rule has in fact survived as the law of New York. While "gratuitous benefits received by a plaintiff" from his employer (benevolence) still bar recovery for lost compensation, "benefits received by a plaintiff as a result of some consideration that has been previously extended"

to his employer (contract) no longer preclude such recovery. Cunningham v. Rederiet Vindeggen A/S, 333 F.2d 308, 316 (2 Cir. 1964), citing Coyne v. Campbell, 11 N.Y.2d at 375, 183 N.E.2d at 892, 230 N.Y.S.2d at 3–4, supra, and Healy v. Rennert, 9 N.Y.2d 202, 173 N.E. 2d 777, 213 N.Y.S.2d 44 (1961). Accordingly, we held that "compensatory employee benefits under a collective bargaining agreement should not reduce plaintiff's award," 333 F.2d at 317.

■ Having reexamined the authorities, we adhere to this interpretation of current New York law. In the present case, the wife was paid by her employer under a sickness and disability plan which was part of the bargain for her labor; she was not the recipient of a mere gratuity. Therefore, we affirm the ruling of the district court that she was not barred from suing the government for her lost wages.

■ The district court also found that the wife sustained a severe injury to her spine caused by her fall, and that she will never improve except by submitting to an operation which thus far she has adamantly refused to undergo. The court granted her $25,000 as compensation for her past and future pain and her bodily impairment. The government attacks the award as excessive. In view of

the uncontradicted testimony that the wife has suffered considerable physical torment, that her domestic activities have been markedly curtailed, and that these consequences of her injury may well be permanent, we cannot say that the damages awarded her by the district court should be reduced.

Affirmed.

MOORE, Circuit Judge (concurring in the result).

I concur in the result. There are many decisions in the New York courts which would justify a judgment in favor of the defendant.[1] There are also decisions in cases where the factual differences from the facts here presented are of minor degree which would appear to support plaintiff's position.[2] No logical distinctions can be made between the two lines of authority and, obviously, a decision in this case cannot wait until New York law in this field becomes clear. Probably much ice will accumulate on many sidewalks during many winters before this occurs and there still may be an almost equal division in result. Each case, therefore, will have to depend on the trial judge's own views as to which line he chooses to follow to achieve an equitable result. Certainly error cannot be charged for the choice made here.

---

[1]. Several New York decisions have refused to impose liability for injuries resulting from depressions of smooth slippery areas in stairs or walks if only a minimal risk could be foreseen. Kraus v. Wolf, 253 N.Y. 300, 171 N.E. 63 (1930); Nazaroff v. Belam Realty Co., 19 Misc.2d 65, 67, 164 N.Y.S.2d 272 (Sup.Ct.1957). Other New York decisions have then analogized these cases to situations where ice has formed in a depression and have held that the property owner is not liable for resulting injuries if only a "slight" risk could have been foreseen from the snow or ice-filled depression. Lynch v. O'Rourke Realty Corp., 2 A.D.2d 851, 155 N.Y.S.2d 847 (2d Dept. 1956), aff'd memorandum decision 3 N.Y.2d 957, 146 N.E.2d 788, 169 N.Y.S.2d 30 (1957); Gibson v. Prudential Ins. Co., 258 App.Div. 740, 15 N. Y.S.2d 100 (2d Dept. 1939) (memorandum decision), appeal dismissed, 283 N.Y. 647, 28 N.E.2d 43.

[2]. This line of New York authority does not cite or discuss the cases cited in note 1, supra, although both lines of authority are based on similar fact situations. Instead, these decisions have also assessed the gravity of the foreseeable risk raised by depressions, either of themselves or when filled with ice or snow, but have consistently imposed liability on the basis that the defective condition raised a substantial foreseeable risk. Zahn v. City of New York, 299 N.Y. 581, 86 N.E.2d 105 (1949) (mem. dec.); Loughran v. City of New York, 298 N.Y. 320, 83 N.E.2d 136 (1948); Epner v. Rhulen, 8 A.D.2d 646, 184 N.Y.S.2d 918 (3rd Dept. 1959); Clapper v. Zubres, 261 App.Div. 850, 24 N.Y.S.2d 377 (3rd Dept.) (memorandum decision), aff'd 285 N.Y. 770, 34 N.E.2d 919 (1941).

As to the "lost wages" item, I would have disallowed the wages which, in fact, were not actually lost. However, this court has taken a contrary position which must control. Cunningham v. Rederiet Vindeggen A/S, 333 F.2d 308, 316 (2d Cir. 1964). Nor are the damages so excessive as to require appellate reduction.