This memorandum is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------

No. 56
Rodney Sherman,
        Appellant,
      v.
New York State Thruway Authority,
        Respondent.

        Norman M. Block, for appellant.
        Andrew Zajac, for respondent.
        New York City Transit Authority, amicus curiae.

MEMORANDUM:

        The order of the Appellate Division should be affirmed, with costs.

        Claimant, a New York State Trooper, slipped and fell on an icy sidewalk outside the trooper barracks in Newburgh. The sidewalk is located on property owned and maintained by defendant

- 1 -

New York State Thruway Authority.  Claimant commenced this personal injury action against the Authority, alleging that it negligently failed to maintain the sidewalk by failing to remove ice and/or placing salt after a winter storm.  Following discovery, both parties moved for summary judgment.  As relevant here, the Authority argued that it was entitled to judgment as a matter of law under the "storm in progress" doctrine.  The Court of Claims denied the parties' motions, finding questions of fact as to whether a storm was in progress at the time of claimant's fall.  The Appellate Division reversed and granted the Authority summary judgment (120 AD3d 792 [2d Dept 2014]).  We granted claimant leave to appeal and now affirm.

Although a landowner owes a duty of care to keep his or her property in a reasonably safe condition, he "will not be held liable in negligence for a plaintiff's injuries sustained as the result of an icy condition occurring during an ongoing storm or for a reasonable time thereafter" (Solazzo v New York City Tr. Auth., 6 NY3d 734, 735 [2005]).  The Authority established prima facie that it was entitled to judgment as a matter of law by submitting uncontroverted evidence that a storm was ongoing at the time of claimant's fall.  Claimant admitted at his deposition that "an ice storm" had taken place the night before the accident, and an "intermittent wintry mix" of snow, sleet and rain persisted the next morning until 6:50 a.m., when claimant arrived at the trooper barracks for work.  Claimant testified,

and a certified weather report confirmed, that it was still raining at 8:15 a.m. when he walked to his vehicle and slipped on a patch of ice.  The undisputed facts that precipitation was falling at the time of claimant's accident and had done so for a substantial time prior thereto, while temperatures remained near freezing, established that the storm was still in progress and that the Authority's duty to abate the icy condition had not yet arisen.  In opposition, claimant failed to raise a triable issue of fact.

Therefore, the Appellate Division properly granted the Authority's motion for summary judgment dismissing the complaint.

Sherman v New York State Thruway Authority

No. 56

RIVERA, J.(dissenting):

This appeal involves the application on summary judgment of the storm-in-progress doctrine to claimant Rodney Sherman's personal injury action against the New York State Thruway Authority (Authority), arising from his slip and fall on an icy patch of a sidewalk under the care and responsibility of the Authority. On the record before us, triable issues of material fact exist as to whether the storm in question had ended, and if so whether a reasonable period of time had passed to hold the Authority liable for negligence resulting in claimant's injuries. Therefore, the Appellate Division should be reversed, and I dissent from the majority's determination to the contrary.

"Since [summary judgment] deprives a litigant of [the party's] day in court it is considered a drastic remedy which should only be employed when there is no doubt as to the absence of triable issues" (Andre v Pomeroy, 35 NY2d 361, 364 [1974]). "The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any

- 1 -

material issues of fact" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). Thus, "[a] party moving for summary judgment must demonstrate that 'the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment' in the moving party's favor" (Jacobsen v New York City Health and Hosps. Corp., 22 NY3d 824, 833 [2014], quoting CPLR 3212 [b]). "This burden is a heavy one and on a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party" (William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 475 [2013] [internal quotation marks omitted]), "and every available inference must be drawn in the [non-moving party's] favor" (People v Torres, 26 NY3d 742, 763 [2016]). If the moving party makes out a prima facie showing, "the burden then shifts to the non-moving party to establish the existence of material issues of fact which require a trial of the action" (Jacobsen, 22 NY3d at 833 [internal quotation marks omitted]).

In support of its summary judgment motion, the Authority relied on the storm-in-progress doctrine, which provides that "[a] property owner will not be held liable in negligence for a plaintiff's injuries sustained as the result of an icy condition occurring during an ongoing storm or for a reasonable time thereafter" (Solazzo v New York City Tr. Auth, 6 NY3d 734, 735 [2005]). "The reasonableness of the time within which [an owner] must respond to its duty to clear the sidewalks

is measured from the time that the storm comes to an end since...'responsibility for ice conditions arises, at the most, only after the lapse of a reasonable time for taking protective measures and never while a storm is still in progress'" (Valentine v City of New York, 86 AD2d 381, 384 [1st Dept 1982], affd 57 NY2d 932 [1982], quoting Valentine v State of New York, 197 Misc 972, 975 [Ct Claim 1950], affd 277 AD 1069 [3d Dept 1950], lv denied 277 AD 1080 [1950]).  The doctrine reflects practical concerns related to the challenges and dangers of maintaining property in reasonably safe conditions during inclement weather (see Powell v MLG Hillside Assoc., L.P., 290 AD2d 345, 345 [1st Dept 2002]).  It "allow[s] workers a reasonable period of time to clean the walkways," and "is designed to relieve the worker[s] of any obligation to shovel snow while continuing precipitation or high winds are simply re-covering the walkways as fast as they are cleaned, thus rendering the effort fruitless" (id.).  Thus, when weather conditions are no longer storm like, or where a storm has turned to rainy conditions that neither imperil workers nor frustrate clean up efforts, the temporary suspension of a property owner's duty of care is no longer justified.

In accordance with these legal principles, in order for the Authority to establish its storm-in-progress defense and thus carry its prima facie burden on summary judgment, it had to proffer admissible evidence that at the time of Sherman's

accident there was an ongoing storm, or that the storm had ceased and a reasonable amount of time had not yet elapsed before the Authority was required to ameliorate the icy sidewalk conditions. In support of the motion, the Authority submitted deposition testimony from four individuals -- Sherman, an Authority Maintenance Supervisor, and two other Authority employees -- as well as a certified weather report from the National Climatic Data Center for Stewart International Airport, which is located five miles from where the accident occurred.

According to Sherman's deposition testimony, on the date of his injury he was working as a state trooper at Troop T barracks in Newburgh, New York.  In describing the weather conditions proceeding the accident, Sherman stated there was an ice storm in the area the night before, that during his commute to work the next morning the weather consisted of a "wintry mix" of sleet and rain, and when he arrived at the barracks at 6:50 a.m. the weather was an "intermittent wintry mix."  He remained indoors until 8:15 a.m. when he left to respond to a traffic accident.  When he stepped outside the barracks he noted that it "had warmed up considerably" and there was a light rain falling. He walked about eight feet before he slipped and fell on an icy area of the sidewalk.

The Supervisor testified that the Authority was responsible for maintaining the sidewalks around the barracks, but during a storm they were a third priority, after the highways

and service areas.  Two construction equipment operators responsible for maintaining the roads during a storm, who worked the respective 3 p.m. to 11 p.m. and 11 p.m. to 7 a.m. shifts the night before and into the day of the accident, both recorded in their logs and testified at their depositions that it was raining.  The climatological report for the Airport, located five miles away from the barracks, indicated rain and mist and above freezing temperatures from 10:45 p.m. the night before and for hours following on the day of the accident.

In opposition to the Authority's motion, Sherman relied on his testimony and the evidence submitted by the Authority, as well as various daily log books from other members of the Authority's salt and sand crew.  The log books for the two construction equipment operators indicate that from 11 p.m. the night before the accident until 6 a.m. the day of, there was light to medium rain.  Sherman argued that this evidence established the storm had ended hours before the accident, and no later than 5:45 a.m.

Applying the storm-in-progress rule, and giving Sherman every favorable inference, as the Court must on summary judgment (see Torres, 26 NY3d at 763), there are triable questions of material fact as to the actual weather conditions before and at the moment Sherman fell.  Specifically, there are questions of fact as to when the storm ended, if at all, and if it did end, how much time had elapsed before Sherman slipped and fell on the

icy sidewalk.  The Authority claimed that the original ice storm was ongoing because at a minimum, winter precipitation continued during defendant's drive to work, and rain was falling during a period of near-freezing temperatures.  Sherman, on the other hand, argued that the storm was over when he sustained his injuries because by that time all road work had been completed, which would not be the case if the storm was ongoing, and at the time of his injury the weather had warmed up, producing light, and not freezing, rain.

We have never held that above-freezing rain alone constitutes a type of storm-in-progress that would relieve a property owner from taking any action to clear or maintain the property.  Thus, if an ice storm has changed, due to warming weather, into mere rain, then the storm has ended.  Applying this test the Authority's summary judgment submissions do not establish whether the storm ended or, if so, whether insufficient time had elapsed to require the Authority to take protective measures.  Sherman testified there was a wintry mix falling the night before and until 6:50 a.m. the day of the accident, and that at 8:15 a.m., when he exited the barracks, moments before his fall, the temperature was considerably warmer and it was raining.  The Authority's employees, log books, and the climatological report all corroborate his testimony that at least the hour before and at the time of the accident, the temperature was above-freezing and it was raining.  The Authority's crew

workers' depositions and log books indicated light to moderate rain throughout the night and the morning of the accident. Therefore, there remain triable questions of material fact as to whether the storm ended and if so when, requiring a trier of fact to resolve the nature of the precipitation both preceding and at the time of Sherman's fall, and whether the rain conditions were storm-like. Furthermore, factual questions remain as to whether the precipitation was a post-storm event preventing the Authority from taking protective measures to avoid accidents from the accumulated icy conditions caused by the storm. In other words, if the storm conditions had passed, such that there was only above-freezing rain, then the justification for the storm-in-progress rule no longer holds water.

Contrary to the majority's conclusory statement that "undisputed facts" establish a storm-in-progress at the time Sherman fell (maj opn at 3), the summary judgment submissions demonstrate that the weather conditions are highly contested. Although the parties agree there was an ice storm the night before the accident, that is where their agreement ends. Given that the summary judgment proof in the form of Sherman's testimony, the Authority's employees' statements and documentary evidence, and the climatological report, all indicate that above-freezing rain was falling in the hours before and at the time of the accident, material factual questions exist as to the nature of the weather conditions and the applicability of the storm-in-

progress doctrine. To the extent the majority infers the storm-like nature of the precipitation, such inference favors the Authority as the moving party. However, on a summary judgment motion this Court must "view the facts in the light most favorable" to Sherman as the non-moving party, and "even if the jury at a trial could, or likely would decline to draw inferences favorable to [Sherman]," the Court "must indulge all available inferences" in his favor (Torres, 26 NY3d at 763). Those inferences, at a minimum, lend support to Sherman's argument that at the time of his accident the ice storm had passed, evidenced by the existence of non-freezing rain, requiring the Authority to take appropriate safety measures to address the accumulated icy conditions.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order affirmed, with costs, in a memorandum. Chief Judge DiFiore and Judges Pigott, Stein and Garcia concur. Judge Rivera dissents in an opinion in which Judges Abdus-Salaam and Fahey concur.

Decided May 5, 2016