**Willard D. DOUGLAS and Violet A. Douglas, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 80–1196.**

United States Court of Appeals, Sixth Circuit.

Argued June 3, 1981.
Decided Sept. 1, 1981.

Frank K. Penirian, Jr., William Stackpoole, Detroit, Mich., for plaintiffs-appellants.

Richard A. Rossman, U.S. Atty., Kenneth R. Fitzpatrick, Hayward L. Draper Asst. U.S. Attys., Detroit, Mich., for defendant-appellee.

Before EDWARDS, Chief Judge, and PHILLIPS and PECK, Senior Circuit Judges.

JOHN W. PECK, Senior Circuit Judge.

The issue on appeal is whether the district court was deprived of jurisdiction of appellant Douglas's personal injury action by Douglas's failure to exhaust administrative remedies under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–80.

The history of Douglas's administrative claim is long and distressing. Douglas contends that on Memorial Day, 1971, he injured his ankle when a rotten plank in a U.S. Navy dock gave way beneath him. The dock was at a naval armory in Detroit

where Douglas, a civilian, was attending a Memorial Day Service.[1]

Ten years ago, in June of 1971, Douglas's attorney first wrote to the Navy concerning his client's injury. What followed is a story of attorneys' lassitude and bureaucrats' shuffles. Fourteen letters passed between Douglas's attorneys and the Navy in the next six years. The handling of Douglas's claim was shifted from office to office, and from officer to officer, no fewer than six times. Douglas's claim was finally denied by the Navy on November 17, 1977. The asserted basis for the denial was Douglas's failure "to provide [the Navy] with the information we repeatedly sought from yourself or your attorney." Douglas timely filed this tort action in the district court. That court dismissed Douglas's action, noting orally that the plaintiff's "failure to exhaust administrative remedies" deprived the district court of jurisdiction.

### I.

The FTCA does not by its own terms require "exhaustion of administrative remedies"; rather, the Act, as amended, provides that "[a]n action shall not be instituted upon a [tort] claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied . . . ." 28 USC § 2675. The controlling question in this case is whether Douglas met the requirement of "presenting" his claim to the Navy. The government argues that Douglas's failure to provide the Navy with certain medical reports and insurance records the Navy re-

quested is "tantamount to a 'failure to file a proper claim.'" (Quoting *Rothman v. United States*, 434 F.Supp. 13, 15 (C.D.Cal. 1977).)

■ The compulsory administrative claim procedure in the amended FTCA was established to reduce congestion of federal courts' dockets and to speed fair treatment of those asserting claims against the federal government. *Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508, 515 (6th Cir. 1974). Prior to 1966, tort claimants could first file suit against the United States; the United States Attorney would then refer the complaint to the relevant agency for possible settlement. *Adams v. United States*, 615 F.2d 284, 288 (5th Cir. 1980), *as clarified*, 622 F.2d 197. The 1966 amendments to the Act reversed this order, eliminating an often superfluous procedural step. These amendments, however, do not make agencies the ultimate or preferred arbiters of federal tort claims, rather only the initial ones.

■ We therefore agree with the Fifth Circuit that the requirements of § 2675 are met "if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." *Adams, supra*, 615 F.2d at 289; see 28 C.F.R. § 14.2 (1980);[2] see also *Crow v. United States*, 631 F.2d 28, 30 (5th Cir. 1980) (per curiam). Douglas did both.

■ Douglas and his attorneys failed to present to the Navy all information required by federal regulations.[3] These regu-

---

1. The government implies that Douglas should not have been on the dock where he was injured; yet the government concedes that the dock was open to the public. With like illgrace, the government repeatedly mentions that Douglas was drinking on the day of the accident—*an unproven assertion wholly irrelevant to this appeal.*

2. This regulation provides: "For the purposes of § 2672 [*sic, vide* 2675?] of Title 28, United States Code, a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an

incident, accompanied by a claim for money damages in a sum certain . . . ."

3. The amended Act empowers the Attorney General to regulate the procedure under which agency heads or their designates "may consider, ascertain, adjust, determine, compromise, and settle any claim for money damage against the United States . . . ." 28 U.S.C. § 2672. Navy regulations incorporate the Attorney General's regulations requiring claimants to submit, among other things, itemized bills for treatment of personal injuries. 32 C.F.R. § 750.40 (1980); 28 C.F.R. § 14.4(b) (1980). Under Navy regulations, failure to provide requested information "may result in no

**448**

lations, however, govern administrative settlement proceedings; they do not set federal jurisdictional prerequisites. By failing to comply with regulations promulgated under 28 U.S.C. § 2672, a claimant loses only "the opportunity to settle his or her claim outside the courts." *Adams, supra*, 615 F.2d at 290.

The views expressed in the Fifth Circuit's opinion in *Adams*, views which are adopted in essence above, are not in conflict with the First Circuit's decision in *Swift v. United States*, 614 F.2d 812 (1st Cir. 1980). In *Adams*, as in the present case, there is no dispute over the finality of an agency's disposition of a claim. In *Swift*, however, the federal agency held a tort claim in abeyance for failure to provide documentation of personal injury. The claimant in *Swift* relied on the statutory provision that "the failure of an agency to make final disposition of a claim within the six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a). The First Circuit held that this provision could not be invoked by one whose failure to provide documentation of damages had prevented the agency from settling her claim.[4] In the present case, as noted, Douglas's claim has been finally and officially denied; he need not depend on the six-month provision of § 2675(a), and *Swift* thus has no relevance to his case.

The government relies particularly on *Rothman v. United States*, 434 F.Supp. 13 (C.D.Cal.1977), and *Kornbluth v. Savannah*, 398 F.Supp. 1266 (E.D.N.Y.1975), as precedent for the rule that the FTCA's claim requirement is not met until the claimant provides sufficient information "to permit an intelligent evaluation" of a tort claim. See *Rothman, supra*, 434 F.Supp. at 16; *accord, Kornbluth, supra*, 398 F.Supp. at

1268. Neither of these cases imposes on claimants a notice requirement more onerous than *Adams'* requirement of notice "sufficient to enable the agency to investigate." In *Rothman*, a father claimed $250,000. in damages caused by the wrongful death of his son, but provided no information whatsoever concerning the son's income or his contribution, if any, to his father. See 434 F.Supp. at 14–17. In *Kornbluth*, a claim for $100,000. for "[m]ultiple bodily injuries, lacerations, contusions, [and] cerebral concussion" was made with no corroborating medical information. See 398 F.Supp. at 1267. In both cases damage was so conclusorily asserted that investigation was difficult if not impossible; in both cases it was truly impossible for the government agents to place a meaningful settlement value on the asserted claims.

Douglas's failure to provide information was not so egregious. Through counsel, he submitted a medical report from the hospital where, five hours after his accident, he received emergency medical treatment for a suspected hairline fracture. Douglas also sent the Navy a report and bill from the Cottage Hospital where a cast was removed from Douglas's left ankle. A radiologist at the Cottage Hospital diagnosed a "healing fracture of the posterior malleolus of the left tibia." Regarding other reports requested by the Navy, Douglas's counsel expressed unexplained difficulty in getting a report from Dr. Wagner, Douglas's treating physician. Douglas never submitted a report from the Jennings Hospital, the hospital where he was taken immediately after his alleged injury. This defect is explained in part in section II, below.

Douglas claimed $15,000. in damages. He submitted a form from his employer, signed by his supervisor, stating

administrative consideration of the claim." 32 C.F.R. § 750.35(c) (1980). The Navy's *denial* of Douglas's claim on this ground thus appears to violate its own regulations—a point not raised by Douglas.

**4.** The facts of *Swift* are only briefly outlined; it appears that the claimant's counsel in that case abandoned one claim and completely ignored all agency requests for documentation of a second claim. Thus, the claimant in *Swift* could not be said to have given the "written notice of . . . her claim sufficient to enable the agency to investigate" that § 2675 and *Adams* require.

that employee Douglas had missed work from May 31, 1971 to August 23, 1971, approximately twelve weeks. The form listed Douglas's average pay as $129. a week, yielding a calculated $1,548. as Douglas's claimed lost pay. Douglas also submitted medical bills from Dr. Wagner and from the Cottage Hospital, totaling $121., yielding a grand total of $1,669. in special damages. Douglas's claimed sum certain of $15,000. allows a generous amount for pain and suffering,[5] but the information he provided did enable the Navy to calculate a reasonable settlement figure.

The government's case contains an undercurrent of innuendo—an implication that Douglas's tardy or imperfect provision of medical and insurance information must conceal fraud. The government, in short, disputes liability. This dispute is perhaps ultimately better suited to judicial than administrative resolution. The FTCA does not bar claimants from federal courts for failing to convince administrative agents of the government's liability. There is a distinction between not settling a claim and attempting to bypass settlement procedures. It cannot be said, on the facts of this case, that Douglas has attempted to evade the FTCA's requirements.

## II.

■ An alternative ground for reversing dismissal of Douglas's action is that the government should be estopped to say that Douglas did not submit all necessary information to the Navy. In a letter of Jan. 4, 1972, a Navy lieutenant wrote Douglas's attorney that:

> Reviewing the correspondance [sic] on the case, I can ascertain that I need only the claims request form (Standard Form 95) to complete my report.
>
> I would appreciate your forwarding these forms as soon as feasibly possible. If by chance you can acquire a statement from Jennings Memorial Hospital (reference our letter of 2 December 1971), it would help. However I can conclude the report without it.

The attorney promptly sent the completed form.

The government now argues that a request for a Form 95 is also a request for "a written report by the attending physician," a report that the instructions on the form say the claimant "should submit." The lieutenant, however, did not request the form and supporting documents, only the form itself. In addition, Douglas's attorney had already submitted medical documents, and the Navy's letter does not by its own terms request more; the attorney might understandably have ignored the request on the form. The report from Jennings Hospital is clearly described in the January 4 letter as helpful but not necessary. The government should not now bemoan not getting that report, nor infer sinister reasons for not receiving it.

## III.

■ The government also argues that Douglas's action was not timely. This ar-

---

**5.** Under the FTCA, compensatory damages are assessed according to state law. *E. g., Smith v. Pena,* 621 F.2d 873, 881 (7th Cir. 1980). In Michigan, damages for personal injury generally include pain and suffering. *E. g., Pelkey v. Elsea Realty & Investment Co.,* 394 Mich. 485, 491, 232 N.W.2d 154 (1975).

The government characterizes as a "red herring" Douglas's invocation of Michigan's collateral-source rule as a justification or mitigation of Douglas's failure to inform the Navy of any insurance or workers' compensation benefits he received after his injury. Yet state collateral source rules are applied in FTCA actions. *Klein v. United States,* 339 F.2d 512, 517–18 (2d Cir. 1964); *Cooper v. United States,* 313 F.Supp. 1207, 1212 (D.Neb.1970).

The information sought by the government might have been helpful as proof of injury and liability; however, the government misrepresents case holdings when it states that FTCA cases have been properly dismissed for claimants' failure to give insurance coverage information. In *Bialowas v. United States,* 443 F.2d 1047 (3d Cir. 1971) and *Robinson v. United States Navy,* 342 F.Supp. 381 (E.D.Pa.1972), dismissal was proper because no sum certain had been claimed. Absence of insurance information was only an example of lack of information from which a specific amount could be computed. See *Bialowas,* 443 F.2d at 1049; *Robinson,* 342 F.Supp. at 383.

gument is wholly and remarkably without merit. The government cites as a "requirement" of the FTCA the provision that:

> The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).

We are in effect urged by the government to strike "at the option of the claimant" from this statute, and hold that Douglas's action was untimely because Douglas failed to file his complaint in the district court within six months of filing his Form 95. Thus the government argues on the one hand that Douglas failed to exhaust his administrative remedies, and, on the other, that he didn't stop exhausting them soon enough.

Like the government,[6] we know a red herring when we smell one.

Reversed.