**William R. SPEARS, et al.,**

v.

**FEDERAL CROP INSURANCE CORP.**

**Civ. No. 4–83–51.**

United States District Court,
E.D. Tennessee,
Winchester Division.

Feb. 15, 1984.

Robert S. Peters, Winchester, Tenn., Doyle Richardson, Tullahoma, Tenn., for plaintiffs.

J. Edgar Schmutzer, Asst. U.S. Atty., Chattanooga, Tenn., for defendant.

**MEMORANDUM**

WISEMAN, District Judge.

This case was tried without a jury before this Court in the Winchester Division of the Eastern District of Tennessee on November 10, 1983. Plaintiffs argued that their

1982 wheat crop, which was destroyed, was insured by defendant. Defendant argued that the 1982 wheat crop was not covered because defendant had terminated plaintiffs' insurance as a result of unpaid premiums on plaintiffs' 1981 wheat crop policies. Pretrial briefs were prepared, testimony was offered, and exhibits were submitted in evidence by both parties. At the request of the Court, each party also submitted a post-trial brief concerning the use of estoppel against the government. On the basis thereof, the Court makes the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

Defendant Federal Crop Insurance Corporation [FCIC] administers an "all risk" crop insurance program established by the Federal Crop Insurance Act of 1980. Under this program an insured farmer is guaranteed a certain amount of production per acre. The all risk insurance covers all losses caused by natural conditions beyond the farmer's control. The farmer may select in advance how much money per bushel or pound that he will receive when he produces less than his guaranteed yield as a result of natural disaster. In addition, premiums may be paid after harvest and no interest will be charged on the delayed payment.

Plaintiff William R. Spears applied for and was granted FCIC insurance for his 1981 wheat crop in September 1980. Mr. Spears elected to be insured at level 3, the highest price level, for 75 percent of his per acre average wheat yield, which translates into $3.50 per bushel for 27.5 bushels per acre. On the same date plaintiffs Jeff Spears, Eddie Spears and Bill Weddington also applied for and received FCIC wheat insurance for land that was owned by plaintiff William Spears. The Spears Farm, 1887 acres in all, was broken down into these units on the advice of FCIC agent Frances Berube. The FCIC, however, later transferred all the insurance to William Spears. Jeff Spears and Eddie Spears are sons of William Spears, and Bill Weddington is the Spears farm manager. All plaintiffs work on the Spears Farm and make

their livings from the farm. All plaintiffs had an insurable interest in the Spears Farm 1982 wheat crop. The plaintiffs are residents of Coffee County and the Spears Farm is located in Coffee County.

The FCIC program, with which plaintiff William Spears also had insurance policies for his corn and soybean crops, is a partnership among the federal government, the farmer, and the private insurance industry. One selling point of the program is that the insured farmer has easy access to information because the program is administered locally by FCIC agents. The FCIC agent who handled plaintiffs' policies was Mr. Frances Berube of the Manchester Insurance Agency. Mr. Berube has attended and administered seminars on the FCIC program and has been an authorized FCIC agent since 1980. The brochures advertising the FCIC program are printed with the instructions to "contact your FCIC agent for details." The FCIC computer printouts for notice of loss payments, the FCIC cancellation and acceptance notices, and the FCIC acreage report form all provide that "if you need information concerning your payment, please contact us at Manchester Insurance Agency."

The FCIC policy provides, among other things, that the insurance shall continue for each succeeding crop year until cancelled or terminated. After the crop year specified on the FCIC application, either party may cancel the insurance for any crop year by giving a signed notice to the other on or before the cancellation date preceding such crop year. The cancellation date for Tennessee is June 30. Failure to pay a premium before the published termination date will result in termination of the policy unless a processed claim for indemnity exists. The termination date for Tennessee is October 10. In addition, wheat must be planted by November 15 to be insured. Notice of damage or loss shall be given promptly in writing by the insured to the corporation at the office for the county. The date of payment for a premium deducted from an indemnity claim is the date the insured signed the indemnity claim.

Plaintiffs in this case informed FCIC agent Berube in Summer 1981 that they would experience a loss in their 1981 corn crop. Following Mr. Berube's advice, however, plaintiffs waited until December 1981 and early 1982 to sign written indemnity claims for this loss. Plaintiffs also had a loss in their 1981 soybean crop for which indemnity forms were filed in April 1982. Plaintiffs experienced no loss in their 1981 wheat crop. The premium, however, for the 1981 wheat crop was due before the termination date October 10, 1981.

Plaintiffs, believing on the advice of Mr. Berube that the wheat premiums would be deducted from the corn and soybean indemnities, failed to pay the 1981 wheat premium. On November 11, 1981, plaintiffs filed a 1982 wheat acreage report of 1900 acres. Meanwhile, plaintiffs received several notices and warnings about the 1981 wheat premium, including a notice in December 1981 terminating the wheat policy. Following the instructions on these notices, plaintiffs contacted Mr. Berube and each time Mr. Berube assured plaintiffs that they had a pending indemnity claim sufficient to cover the 1981 wheat premiums and that their wheat insurance would continue despite termination notices. Plaintiffs reasonably and in good faith relied on Mr. Berube's advice. Moreover, plaintiffs' FCIC file was misplaced for months, which hindered their ability to get any more information from their agent.

Plaintiffs experienced a loss on their 1982 wheat, attributable to natural causes, on which they never filed a written claim because they were trying to get the wheat policy reinstated. Plaintiffs, however, reported their 1982 wheat loss to their FCIC agent and reasonably relied on his instructions. The preponderance of the evidence, which includes plaintiff William Spears' testimony and his 1982 acreage reports, is that plaintiffs planted their 1982 wheat within the November 15 insurance deadline. Plaintiffs' 1982 wheat loss was on 1887 acres of wheat on which they made 13,975.89 bushels, or 7.406 bushels per acre. Plaintiffs wheat policy guaranteed 27.5 bushels per acre at $3.50 per bushel,

which results in a loss of 37,917.38 bushels, or $132,710.83.

**Conclusions of Law**

■ Jurisdiction of the Court in this action is authorized under 7 U.S.C. § 1506(d). The Court finds that under the terms of plaintiff's FCIC policy, and as authorized by 7 C.F.R. § 418, plaintiff William Spears' failure to pay his 1981 wheat premium terminated his wheat policy. Nevertheless, the Court also finds that plaintiff's failure to pay his 1981 premium resulted from his reasonable reliance on the misrepresentations of FCIC agent Berube, which equitably estops the defendant from enforcing the termination provisions of the policy.

■ The traditional requirements of estoppel are that the party to be estopped must know or should know the facts and must intend that his conduct shall be acted on or act such that the party asserting the estoppel has a right to believe it is so intended, and the party asserting estoppel must be ignorant of the true facts and must rely to his detriment on the conduct of the other party. *Hecht v. Harris, Upham & Co.*, 430 F.2d 1202 (9th Cir.1970). These elements are present in this case. FCIC agent Berube was an authorized agent of defendant. Defendant knew the facts and Mr. Berube should have known them. Mr. Berube acted with the clear intention that plaintiff rely on his conduct, and plaintiff so relied to his detriment. Furthermore, plaintiff's reliance was reasonable and in good faith.

Nevertheless, defendant argues in this case that traditional estoppel principles do not apply because the defendant is the federal government. Defendant cites as support *Federal Crop Insurance Corporation v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), in which an FCIC agent misled a farmer into believing that the farmer was insured for spring wheat reseeded on winter wheat acreage. The Court in *Merrill* held that, because of concerns for the protection of public interests and resources, traditional estoppel principles did not apply against the federal government.

The doctrine of equitable estoppel as applied to the government, however, has "undergone considerable development since *FCIC v. Merrill.*" *See Rogers v. Tennessee Valley Authority,* 692 F.2d 35 (6th Cir.1982). Courts since *Merrill* have applied estoppel against the government with increasing frequency, but without uniformity. Note, *Equitable Estoppel of the Government,* 79 Colum.L.Rev. 551 (1979). This application has resulted in confusion and conflict among the circuits about the proper standard. *Compare, e.g., United States v. Harvey,* 661 F.2d 767 (9th Cir. 1981); *Yang v. INS,* 574 F.2d 171 (3d Cir. 1978); *with Hicks v. Harris,* 606 F.2d 65 (5th Cir.1979). *See also Rogers, supra* at 37–38. Some courts apply estoppel against the government when the conduct of the agent involved is in the performance of a proprietary function as distinguished from a governmental function. *See, e.g., Hicks v. Harris, supra.* Other courts, however, reject this distinction and instead balance the private interests involved against any infringement on the government's responsibility to represent the public. *See United States v. Lazy FC Ranch,* 481 F.2d 985 (9th Cir.1973).

The Ninth Circuit has developed a rule that the government may be estopped only if the party invoking the estoppel proves "affirmative misconduct" on the part of the government agent. *United States v. Ruby,* 588 F.2d 697 (9th Cir.1978). The Supreme Court has recognized the doctrine and while acknowledging that estoppel may lie against the government in the proper case, the Court explicitly has declined to accept or reject the "affirmative misconduct" approach. *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). In addition, the Sixth Circuit Court of Appeals in an alternative holding has applied estoppel against the government but has not enunciated a standard for its application. *See Douglas v. United States,* 658 F.2d 445 (6th Cir.1981). The court in *Rogers, supra* at 38, found it unnecessary to reach "the question of whether 'affirmative misconduct' is a necessary element to a claim of estoppel against the government

in this Circuit." The court in *Douglas, supra,* seemed to rest its decision on a consideration of justice and fair play, the traditional basis for the application of equitable estoppel, without distinguishing the government as defendant. The Court in this case also adopts this traditional reasoning in applying estoppel against the defendant.

The Court finds no reason that traditional principles of estoppel should not apply to the federal government in the same manner they apply to private parties. The government should be held to at least as strict a standard of responsibility for its actions as should private individuals. Estoppel as an equitable doctrine should be applied when justice and fair play require it. *See Ruby, supra* at 703. Moreover, the Court rejects the "affirmative misconduct" standard developed by the Ninth Circuit as too vague to provide any meaningful direction. No discernible distinction exists between the cases that have been held to contain "affirmative misconduct" and those that have not. For example, the Court in *Ruby, supra,* refused to find affirmative misconduct when the government brought suit to quiet its title to certain land erroneously omitted from federal land patents in early surveys. The landowners counterclaimed on the basis of estoppel. The court held that although the traditional elements of estoppel were present, the government did not make an affirmative misrepresentation or concealment of the erroneous survey. The government had known of the mistake and decided not to resurvey, the court found, but because it did not actively conceal the facts, estoppel would not lie. The court did not find the erroneous survey to be an affirmative misrepresentation. The court in *United States v. Wharton,* 514 F.2d 406 (9th Cir.1975), however, found affirmative misconduct in the misinformation given by a government official to a party who approached the official to determine what the party's family could do to gain title to lands the family had occupied since 1919. The official told the party that no way existed for him to gain title when in

fact it was still possible to do so. The misrepresentation was not discovered until the time had passed for the party to gain the title. Although a distinction possibly could be made in the existence or nonexistence of detrimental reliance because the facts are unclear what and how much injury the citizens in *Ruby* suffered, this Court finds no practical or prudential distinction between the government's conduct in *Ruby* and in *Wharton. See Ruby, supra* at 705–707 (Ely, C.J., dissenting).

The prevailing argument for opposing the use of estoppel against the government is that in many cases the application of the doctrine is unduly damaging to the public interest. *See, e.g., Ruby, supra.* This Court, however, reasons that it is specifically because the government's actions affect the public interest that the government should be held strictly accountable and responsible for these actions. Our government is the corporate extension of our selves and should represent the best that is within us. When we corporately deal with one of us as an individual, we should deal no less equitably, morally and justly than we require individuals to deal with each other. Concern for the corporate fisc should not displace concern for the corporate character. *See* Berger, *Estoppel Against the Government,* 21 U.Chi.L.Rev. 680, 707 (1954).

Accordingly, having found that the traditional elements of estoppel exist in this case and finding no compelling countervailing policy considerations, the Court holds the defendant estopped from invoking the FCIC termination regulations on the payment of premiums as a defense to this action. The Court consequently holds for the plaintiff and grants the requested relief of $132,710.83 plus interest and costs.