**Warner D. SURRATT, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 83 C 737.

United States District Court, N.D. Illinois, E.D.

March 15, 1984.

694

Louis S. Goldstein, Chicago, Ill., for plaintiff.

Steven Miller, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge;

Defendant has moved for summary judgment in this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671–80 (1976). Plaintiff alleges that he was the victim of medical malpractice at the Veteran's Administration ("VA") hospital at Downey in North Chicago, Illinois. The complaint alleges that plaintiff went to the hospital because of urethral bleeding and a deformity of his penis. He underwent surgery on the advice of VA physicians in October 1981. Allegedly as a result of the treatment plaintiff received at the hospital, he is now unable to achieve an erection or engage in sexual intercourse, he has suffered a loss of tissue in his penis and loss of feeling in a part of his penis, he has difficulty in urination, and he has sustained physical disfigurement and emotional trauma.

The United States asserts two grounds for summary judgment: plaintiff's failure to file a proper administrative complaint under 28 U.S.C. § 2675(a), and the absence of a factual basis for the lawsuit. In addition, plaintiff has moved for reconsideration of an order we entered on October 6, 1983 granting the United States' motion that it be substituted as sole defendant in place of the VA and three VA physicians, whom plaintiff had named as defendants.

Plaintiff initially submitted a claim to the VA in April 1982 and amended it in May 1982. The claim was filed on a standard government form. Motion for Summary Judgment, Ex. A. It gives plaintiff's name, identifies the date, time, and place of the occurrence, and under the heading "description of accident" states "[m]edical malpractice—post surgical error." Under "nature and extent of injury," plaintiff states "[i]njury to penis." As "witnesses," plaintiff identifies the three physicians he alleges committed malpractice. Plaintiff identifies the amount of his claim as $2 million.[1]

On July 26, 1982, an attorney with the VA sent plaintiff's attorney a letter acknowledging receipt of the claim. The letter went on to state that the VA was authorized by 28 C.F.R. § 14.4 and 38 C.F.R. § 14.607 to request additional information to assist it in investigating plaintiff's claim. The VA attorney requested records of and bills for all non-VA treatment for the condition since January 1979; documentation of any claim for lost wages or income; a detailed statement outlining the basis for the claim for $2 million; "[a] medical statement explaining why you believe the medical care provided was negligent"; and any other evidence that might bear on the United States' responsibility for plaintiff's injury. Motion for Summary Judgment, Ex. B. It is undisputed that plaintiff's attorney did not send the VA any information pursuant to this request.

On September 24, 1982, plaintiff's attorney contacted the VA attorney handling the claim, Dennis Kokinda. According to plaintiff's attorney, he told Kokinda that he needed some of the VA's records concerning plaintiff. He further states that he invited Kokinda to visit his office to discuss the case and examine plaintiff's attorney's file; Kokinda responded that he would wait to obtain the opinion of the VA physician then investigating the claim. Affidavit of Louis S. Goldstein ¶¶ 5–8. According to

---

1. Plaintiff's original claim form stated that plaintiff's damages were in excess of $15,000. Plaintiff amended this in response to a letter from the VA stating that the original claim was deficient because it failed to state a sum certain.

Kokinda, plaintiff's attorney told him that an expert had evaluated the care provided to plaintiff; Kokinda states that he instructed plaintiff's attorney to submit the expert's evaluation to the VA. Affidavit of Dennis A. Kokinda ¶ 3; Motion for Summary Judgment, Ex. C–1 (handwritten memorandum prepared by Kokinda apparently at the time of the telephone conversation). It is undisputed that plaintiff did not send the VA any additional information as a result of the September 24 phone conversation.

On December 6, 1982, the VA denied plaintiff's claim. The letter of denial stated that the VA's investigation "ha[d] failed to reveal any negligence or wrongful act or omission" on the part of any VA employee acting within the scope of his employment. Motion for Summary Judgment, Ex. D. The denial did not mention plaintiff's failure to complete the documentation of his claim.

The government did not submit to the court the reverse side of plaintiff's claim form. Plaintiff has submitted it as part of a surreply memorandum. The reverse of the form contains spaces for information

relating to insurance coverage of the claimant. Plaintiff stated in the pertinent part of the form that he had filed a claim with his medical insurer "for payment to University of Chicago Hospital for surgical work to repair penis." Plaintiff's Sur-Reply, Ex. E at 2.

■ An FTCA action may not be commenced unless the claimant presents a claim to the appropriate federal agency and the agency denies the claim. 28 U.S.C. § 2675(a) (1976).[2] The administrative claim requirement is jurisdictional. *Best Bearing Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir.1972). Here, of course, plaintiff filed a claim; the issue is whether it was sufficiently detailed.

The government argues that the VA's request for additional information was authorized by 28 C.F.R. § 14.4 (1982) and 38 C.F.R. § 14.607 (1983). The former regulation was promulgated by the Department of Justice under the FTCA and the latter by the VA. The regulations are essentially identical. Both identify the types of information the agency may require a tort claimant to provide in support of a claim.[3]

**2.** An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this action. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim. 28 U.S.C. § 2675(a) (1976).

**3.** The VA's regulation providing for documentation of a personal injury claim provides as follows:

In conducting the investigation into the facts and circumstances giving rise to the claim, the District Counsel will consider the following guidelines to the extent applicable:

.   .   .   .   .

(b) Personal injury. In support of a claim for personal injury, including pain and suffering, the claimant may be required to submit the following evidence or information:

(1) A written report by the attending physician or dentist setting forth the nature and extent of treatment, any degree of temporary or permanent disability, the prognosis, period of hospitalization, and any diminished earning capacity. In addition, the claimant may be required to submit to a physical or mental examination by a physician employed by the agency or another Federal agency . . . .

(2) Itemized bills for medical, dental, and hospital expenses incurred, or itemized receipts of payment for such expenses.

(3) If the prognosis reveals the necessity for future treatment, a statement of expected expenses for such treatment.

(4) If a claim is made for loss of time from employment, a written statement from his or her employer showing the actual time lost from employment, whether he or she is a full- or part-time employee, and wages or salary actually lost.

(5) If a claim is made for loss of income and the claimant is self-employed, documentary evidence showing the amount of earnings actually lost.

According to the government, the failure to document a claim pursuant to a request under these regulations renders the claim deficient.

■ Assuming for the present that Kokinda correctly recalls his September 24, 1982 conversation with plaintiff's attorney, plaintiff did not comply with the VA's request for additional information and documentation. The first issue we must address is whether this failure serves as a bar to plaintiff's action.

The government relies on *Swift v. United States*, 614 F.2d 812 (1st Cir.1980) and a number of other cases of similar effect. In *Swift* the claimant, the representative of a person killed in an automobile accident with a United States Forest Service employee, sent a letter to the Forest Service stating a claim for $2 million. The agency provided her with a claim form and asked her to provide it with the necessary evidence needed in support of the claim. Four months later, the claimant filed the claim form without documentation. The agency again wrote her, detailing its need for information before it could process her personal injury claim. The claimant's counsel ignored the letter. The agency sent two more similar letters, warning that it could not process the claim without the necessary supporting information. Once six months passed, counsel deemed the claim denied under § 2675(a), *see* n. 2 *supra,* and filed a lawsuit.

The court of appeals in *Swift* accepted the district court's finding that plaintiff's failure to document her claim "prevented the agency from further evaluating the claim for settlement purposes, the very reason for the stringent claim requirements" in § 2675(a). *Id.* at 814. The agency was

authorized under the FTCA regulations and its own regulations to request supporting information, the court noted. *Id.* The agency would have been authorized to deny the claim, the court stated, since this was "a case ... where counsel's neglect prevented the agency from acting on the claim." *Id.*[4]

In *Lovell v. Unknown Federal Correctional Officers,* 595 F.2d 281 (5th Cir.1979) (per curiam), the court rejected an FTCA claim by an inmate who had failed to place a value on his lost property claim in response to an agency request. "[T]here was no way the government could act to pay his claim if it felt it should be paid. [Plaintiff] gave no values, not even his own estimate, but only a gross figure ... which ... far exceeded any reasonable estimate of valuation." *Id.* at 282.

Also supporting the government's position is *Kornbluth v. Savannah,* 398 F.Supp. 1266 (E.D.N.Y.1975). *Kornbluth* involved an automobile accident between the claimants and a Postal Service vehicle. After the claim was filed, the agency wrote the claimants' attorney twice over a two year period stating that the claim had to be supported by written reports of attending physicians and itemized accounts of medical bills. The agency denied the claim when no response was offered. The court held that the lawsuit was barred, stating that

[t]he purpose of requiring preliminary administrative presentation of a claim is to permit a government agency to evaluate and settle the claim at an early stage, both for the possibility of financial economy and for the sake of relieving the judicial burden of FTCA suits. These purposes would be defeated if a claimant

---

(6) Claimant may be requested to furnish a copy of a medical opinion supporting his or her contention of malpractice.

(7) Any other evidence or information which may have a bearing on either the responsibility of the United States for the personal injury or the damages claimed.

38. C.F.R. § 14.607(b) (1983). The general FTCA regulation is nearly identical. 28 C.F.R. § 14.4(b) (1982).

**4.** The court also rejected plaintiff's argument that since the agency's letter only referred to the personal injury claim in voicing the need for more information, only the personal injury claim would be barred, stating that to allow fragmentation of claims would compound the administrative and judicial burdens that the administrative claim requirement was designed to reduce. *Id.* at 814.

could refuse to submit the information necessary for the agency to evaluate the claim and then present the matter for the first time to a district court.

*Id.* at 1268.

In *Rothman v. United States,* 434 F.Supp. 13 (C.D.Cal.1977), the plaintiff attempted to distinguish *Kornbluth,* arguing that the crucial factor in that case was that the agency denied the claim specifically because of the failure to document it. In *Rothman* the agency's rejection letter stated, like the letter in the present case, that the denial was due to the fact that the agency's investigation had not turned up any evidence of negligence by agency personnel.[5] The court stated that the rejection letter was a form letter that did not purport to be a complete explanation of the reasons for denial of the claim. *Id.* at 16–17. The claimant's failure to furnish the agency with requested information about his claimed damages, the court stated, "absolutely foreclosed the government from arriving at a reasonable settlement figure. Such information was in the sole control of plaintiffs, and by withholding it they automatically frustrated the purpose of Congress in requiring an administrative claims procedure in the first place." *Id.* at 17. The court therefore dismissed the case for want of subject matter jurisdiction due to the failure to file a proper claim.[6]

*Swift* (and implicitly the other cases above) was rejected by the Fifth Circuit in *Adams v. United States,* 615 F.2d 284 (5th Cir.), *modified on reh'g,* 622 F.2d 197 (5th Cir.1980) (per curiam). *Adams* was a medical malpractice case. A standard claim form was submitted to the agency. The agency requested additional information under 28 C.F.R. § 14.4(b), much as did the

VA in the present case. The plaintiff's attorney responded that the agency had everything it needed, but that he would "exchange information" with the agency once it had investigated the claim. The agency responded that the information was necessary to evaluate the claim, since the victim of the alleged malpractice had been transferred from the agency's hospital without diagnosis; it stated that refusal to provide the requested information could result in denial of the claim. The plaintiff's attorney responded that he would furnish the information when he obtained it. However, after the agency had had the claim under consideration for six months, the claimant filed suit under the FTCA without providing the agency with further documentation.

The government argued in court that the failure to comply with the agency's request for additional information, a request authorized by the same or identical regulations relied upon by defendant here, required dismissal of the lawsuit. The court stated, however, that the regulations in question had been promulgated not pursuant to § 2675, but rather under § 2672, which gives agencies authority to settle claims. It declined to read the administrative claim requirement of § 2675 in light of the § 2672 regulations: "[t]he question whether a plaintiff has presented the requisite section 2675 notice is determined without reference to whether that plaintiff has complied with all settlement related requests for information." *Id.* at 288. The notice of claim was sufficient under 28 C.F.R. § 14.2, the only § 2672 regulation that conceivably attempts to define notice under § 2675.[7]

The court relied on the legislative history of § 2675 in stating that the government's

---

**5.** *Rothman,* like the present case, involved a medical malpractice claim against the VA.

**6.** *Accord, Manis v. United States,* 467 F.Supp. 828 (E.D.Tenn.1979) (failure to respond to agency's request for more information required dismissal for failure to exhaust administrative remedies; claim form failed to give any details or factual background for plaintiff's claims); *Robinson v. United States Navy,* 342 F.Supp. 381 (E.D.Pa.1972) (claim form submitted without requested supporting information was deficient;

form also failed to set out a definite amount of property damage).

**7.** Section 14.2(a) provides that

[f]or purposes of the provisions of 28 U.S.C. § 2401(b) and 2672, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim

argument confused the distinct functions of presenting notice and engaging in settlement:

> Congress intended the section 2675 requirement of presenting notice to be construed in light of the notice traditionally given to a municipality by a plaintiff who was allegedly injured by a municipality's negligence. [S.Rep. No. 1327, 89th Cong., 2d Sess. 8, *reprinted in* 1966 U.S. Code Cong. & Admin.News 2515, 2517.] Congress deemed this minimal notice sufficient to inform the relevant agency of the existence of a claim.
>
>> The purpose of this notice [is] ... to protect the [government] from the expense of needless litigation, give it an opportunity for investigation, and allow it to adjust differences and settle claims without suit.
>
> *Id.* (quoting 18 E. McQuillin, The Law of Municipal Corporation § 53.153, at 545 (3d ed. 1977)).

*Id.* at 289. According to *Adams,* § 2675 is satisfied if the claimant (1) gives the agency written notice of his or her claim sufficient to enable it to investigate, and (2) places a value on the claim. *Id.* (citing S.Rep. 1327 at 7, 1966 U.S.Code Cong. & Admin.News at 2516; 18 E. McQuillin, The Law of Municipal Corporations § 52.153 (3d ed. 1977)). The regulations promulgated under § 2672 have as their purpose facilitating settlement efforts, not establishing additional procedural barriers to the filing of FTCA lawsuits. *Id.* at 290–91. Therefore, the claimant's failure to comply with the agency's request for additional information did not deprive the court of jurisdiction to hear the FTCA action.

On rehearing the *Adams* court noted that the case was not one where the claim form was "inadequate in content or detail."

622 F.2d at 197. Rather, it involved the question whether the agency had the authority to require supplementation of a notice that contained enough details about the underlying incident to enable the agency to begin its investigation. Though the court stated that it rejected *Swift,* it noted that it had not addressed the question whether a claimant's refusal to comply with an agency's "reasonable request for supplemental information to clarify an inadequate claim" would affect the FTCA court's jurisdiction to hear the case. *Id.*

*Adams'* view of the "additional information" regulations as promulgated pursuant to § 2672 and as not affecting the question of the adequacy of notice under § 2675 has been accepted by nearly every court that has addressed the issue since *Adams.* See *Warren v. Department of Interior,* 724 F.2d 776 (9th Cir.1984) (en banc); *Avery v. United States,* 680 F.2d 608, 610–11 (9th Cir.1982); *Tucker v. United States Postal Service,* 676 F.2d 954, 957–60 (3d Cir.1982); *Blue v. United States,* 567 F.Supp. 394, 396–97 (D.Conn.1983); *Reynoso v. United States,* 537 F.Supp. 978, 979–80 (N.D.Cal. 1982); *Speer v. United States,* 512 F.Supp. 670, 674 (N.D.Tex.1981); *Hoaglan v. United States,* 510 F.Supp. 1058, 1060–61 (N.D. Iowa 1981). All of these cases also adopt, in one form or another, *Adams'* two-part test.[8]

In *Douglas v. United States,* 658 F.2d 445 (6th Cir.1981), the court agreed with *Adams* as to the source of the regulations and adopted the *Adams* two-part test, but it went on to state that *Adams* was not in conflict with *Rothman* and *Kornbluth.* The *Douglas* court's theory was that in both of those cases the request for damages in the claim form was so conclusory that investigation and determination of a settlement value were rendered impossible.

---

for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident.

28 C.F.R. § 14.2(a) (1982).

**8.** In its memorandum in support of summary judgment, the government made an obvious misstatement when it argued that "[t]he cases considering the effect of an FTCA plaintiff's

failure to submit documentation of the administrative claim in response to the agency's request for such information *have uniformly held* that the action must be dismissed for lack of subject matter jurisdiction." Motion for Summary Judgment at 5 (emphasis supplied). Certainly government counsel should have known of *Adams* and its progeny.

*Id.* at 448. Though the court stated that "[t]here is a distinction between not settling a claim and attempting to bypass settlement procedures," *id.* at 449, under the court's construction of *Adams* in light of *Rothman* and *Kornbluth*, it is conceivable that plaintiff's claim here would fail to pass muster under *Douglas.*[9]

We think that *Adams* and its progeny are in full accord with the legislative history of § 2675(a) and the purposes of the administrative claim requirement, and we choose to follow those cases rather than *Swift.* We think that the claim here gave the VA sufficient information to investigate plaintiff's claim, and that the case does not fall within the gap arguably left open by the opinion on rehearing in *Adams.* The form apprised the agency of the place, date, and time of the incident, identified the claim as relating to medical malpractice, and identified the VA personnel alleged to have knowledge of the incident. The reverse side of the claim form also informed the agency that plaintiff had undergone post-surgical care at the University of Chicago hospital. Though the damage figure given by plaintiff, $2 million, was not itemized, it satisfied the "sum certain" requirement in 28 C.F.R. § 14.2(a) and 38 C.F.R. § 14.604(b). The additional information the VA requested was pursuant to regulations promulgated to aid the agency in determining which claims to settle under § 2672, not to define the notice required by § 2675(a).

One might quarrel with a plaintiff who does not facilitate pre-litigation settlement in an FTCA case, but such a failure does not deprive a court of jurisdiction over the plaintiff's action. This is particularly true where, as here, the agency at no time suggested that the requested additional information was in any way necessary to its investigative efforts or that the claim would be denied if the requested additional information was not provided.[10] The letter sent to plaintiff's attorney on July 26, 1982 simply stated that the purpose of the additional information was "to assist [the VA] in [its] investigation." Motion for Summary Judgment, Ex. B. Even were we to accept the government's view of the law, it should not be permitted to sandbag a claimant by waiting until an action is filed to take the position that documentation is a *sine qua non* of an adequate administrative claim.

We further note that there is no factual support in the record for the government's assertion that plaintiff's failure to document his claim actually impeded the VA's investigative efforts. In addition, though the government now construes the claim form as referring only to "post-surgical error," the VA appears to have understood the claim correctly as encompassing plaintiff's entire course of care at the hospital. Motion for Summary Judgment, Ex. D (letter denying claim) (referring to "care rendered ... while [plaintiff] was hospitalized

9. *Douglas* also distinguished *Swift*, noting that in that case the issue was whether one who had failed to document a claim could invoke § 2675(a)'s "option," *see* n. 2 *supra*, of deeming a claim denied after six months. The court noted that the *Swift* court dismissed the plaintiff's claim as premature and did not hold it barred due to insufficiency of the administrative claim. *Douglas*, 658 F.2d at 448.

10. Though the government does not make the argument, perhaps because it did not submit page 2 of the claim form to us, we note that there is extra small print on that page that states that "[f]ailure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim 'invalid.'" Plaintiff's Sur-Reply, Ex. E at 2. The "requested material" includes a list somewhat similar to the VA's regulation relied upon here. Much of the information referred to on the form's listing, which is also in extra small print, was already in the *possession of the VA, since the medical care in* question began in the VA's hospital. In any event, since the VA's letter requesting information from plaintiff, which was not in small print, did not refer to the possibility of denial of the claim, in our view the government should not be entitled to rely on the small print on the claim form here. We do not hold that the government is estopped from such reliance (though we note that it does not rely on the form's admonition even in this court); rather, we simply agree with *Adams* and its progeny, which, since the form used here is standard throughout the government, implicitly reject reliance on the form's admonition.

from October 4, 1981, to October 16, 1981 . . . .").

The motion for summary judgment for lack of subject matter jurisdiction based on the alleged inadequacy of the administrative claim is denied. In light of our holding that the claim form was sufficient, the government's request for an evidentiary hearing is denied, and we grant plaintiff summary judgment on the question of the adequacy of the administrative claim. *See Stamatiou v. United States Gypsum Co.,* 400 F.Supp. 431, 440 n. 7 (N.D.Ill.1975) (court may grant summary judgment to non-moving party where no material facts are in issue and non-moving party is entitled to judgment as a matter of law), *aff'd,* 534 F.2d 330 (7th Cir.1976).

■ The government next argues that discovery has shown that there is no factual basis for this action. Actually, the government's argument is that plaintiff filed the lawsuit not knowing whether he had a claim, hoping to use the discovery process to learn whether a valid claim existed. The government states that plaintiff's answers to interrogatories reveal that plaintiff did not investigate the facts alleged in the complaint before filing suit, that the only witnesses plaintiff intends to call at trial are the VA physicians originally named as defendants, that he will not know what acts of negligence he claims until after deposing the physicians, and that plaintiff is not completely certain whether he is relying on a claim of error in surgical procedures, lack of informed consent, or post-surgical error.

From plaintiff's surreply memorandum, we have learned that the depositions of the VA physicians have now been taken, as have the depositions of plaintiff and two physicians apparently hired by plaintiff as expert witnesses. Plaintiff's Sur-Reply at 10. In any event, for the present it is undisputed that plaintiff left defendant's hospital with a condition that can only be described as horrifying. That plaintiff has tendered two medical experts to defendant for deposition suggests that despite plaintiff's interrogatory answers plaintiff had some basis when the suit was filed for

alleging that the VA's physicians had been negligent. That, in combination with plaintiff's obvious physical injury, provides a sufficient basis for the filing of the lawsuit. Where, as here, all information concerning what actually happened to plaintiff is contained in medical records possessed by defendant or in the memory of physicians employed by defendant, defendant cannot complain that plaintiff has not adequately spelled out what happened to him.

■ This leaves only plaintiff's motion for reconsideration of our order substituting the United States as sole defendant. Under 38 U.S.C. § 4116 (1976), the FTCA constitutes the exclusive avenue for claims of medical malpractice or negligence involving VA personnel. The effect of this statute is to immunize from suit the personnel involved in the alleged malpractice. *See, e.g., Benitez v. Presbyterian Hospital,* 539 F.Supp. 470, 472 (D.P.R.1982) (citing cases).

■ To overcome the immunity conferred by § 3116, plaintiff argues this case involves the exercise of a "discretionary function" by the VA doctors. Were this the case, under 28 U.S.C. § 2680(h), the FTCA would not provide the remedy for plaintiff's injury. However, medical decisions by government doctors providing medical care are not considered the exercise of a discretionary function within the meaning of the statute. *See Beins v. United States,* 695 F.2d 591, 614–15 & n. 31 (D.C.Cir.1982) (concurring opinion) (citing cases). Plaintiff states without explication that "eligibility and hospital admission questions" would be deemed discretionary. We are unsure what plaintiff means by this, but even if he is correct in his view of the law, no such issues are presented by the complaint in this case.

■ Finally, plaintiff argues that the complaint contains claims of battery, and that under § 2680(h), the FTCA does not provide the remedy for those claims. It appears that plaintiff's purported battery claims are those relating to the absence of informed consent before the surgery was performed. However, the complaint alleges that the consent given by plaintiff was not informed consent, not that plaintiff

gave no consent at all. As explained by the Seventh Circuit in *Lojuk v. Quandt,* 706 F.2d 1456, 1460 (7th Cir.1983), for a battery to exist, there must be a total absence of consent. Thus, plaintiff cannot come within the "battery" exception of § 2680(h).

For the reasons stated above, defendants' motion for summary judgment is denied. Summary judgment is entered in plaintiff's favor on the question of the adequacy of his administrative claim. Plaintiff's motion for reconsideration is denied. The discovery/trial schedule established on December 12, 1983 will remain in effect.