**WEST CENTRAL PACKING, INC., Plaintiff,**

v.

**EMPIRE FIRE AND MARINE INSURANCE COMPANY, and Federal Crop Insurance Corporation, Defendants.**

No. 5:92–CV–55.

United States District Court,
W.D. Michigan,
Southern Division.

June 3, 1994.

Edward T. Noonan, Anderson, Stull & Kraft, Lansing, MI, for plaintiff.

Thomas E.S. Tiderington, Piatt, Bartosiewicz, Tiderington & Kimbrel, Kalamazoo, MI, John A. Wilson, Asst. U.S. Atty., and

Michael H. Dettmer, U.S. Atty., Grand Rapids, MI, for defendants.

## *OPINION*

QUIST, District Judge.

West Central Packing, Inc. (West Central) operates apple orchards located in Van Buren County, Michigan. In 1990, 1991, and 1992 West Central's orchards suffered damage. This lawsuit involves the amount of damage experienced by West Central in 1991, the adjustment of its claims for that year and the cancellation of West Central's 1992 crop insurance coverage. This matter is presently before the Court on West Central's motion for partial summary judgment. On January 31, 1994, this Court heard oral arguments on the motion and permitted West Central to file a supplemental brief with additional evidence in support of its motion.

## *BACKGROUND FACTS*

West Central alleges that damage to its 1992 apple crop was covered by insurance obtained through defendant Empire Fire and Marine Insurance Company (Empire). Empire contends that West Central's 1992 insurance policy had been cancelled as a result of its failure to pay premiums. The facts relevant to this motion are outlined below.

The insurance policy applicable to this case contained the following language:

15. Life of Contract, Cancellation, and Termination.

a. This contract will be in effect for the crop year specified on the application and may not be cancelled by you for such crop year. Thereafter, the contract will continue in force for each succeeding crop year unless cancelled or terminated as provided in this section.

b. This contract may be cancelled by either you or us for any succeeding crop year by giving written notice on or before the cancellation date preceding such crop year.

c. This contract will terminate as to any crop year if any amount due us on this or any other contract with you is not paid on or before the termination date

preceding such crop year for the contract on which the amount is due. The date of payment, if the amount is paid by deduction from an indemnity, will be the date you sign the properly completed claim form.

On October 23, 1991 Empire, through its managing agent, National Ag Underwriters, Inc. (NAU), billed West Central $73,821.00 for its 1991 crop insurance. The Notice stated in part:

You may disregard this notice if there is a loss claim pending which will pay the debt on the crop(s) listed above.

\* \* \*Importance Notice\* \* \*

Dear Policyholder:

Your crop insurance coverage will terminate on 11/20/91. If you do not pay your premium for the 1991 crop year coverage, you will not be eligible for crop insurance for the 1992 crop year. If crop insurance is a requirement for emergency loans or disaster payments in 1992, you will also be ineligible for those programs.

Please contact your agent with any questions regarding this notice. If payment has been made, please disregard this letter and accept our thanks for your business.

On November 1, 1991, Eugene Rasch sent a letter to the Michigan Crop Insurance Agency on behalf of West Central. The letter stated that West Central wanted to conditionally terminate its crop insurance for the 1992 crop year.

It is with deep regret that we must conditionally terminate our crop insurance. West Central Packing, Inc., deeply desires to have reasonable crop insurance. West Central Packing, Inc., deeply desires to pay appropriate premiums for appropriate coverage. We enclose our letter of November 30, 1990 to you.

West Central Packing, Inc., desires to renew a policy of crop insurance only if the yield the insured yield would reflect the production contained in the November 30, 1990 communication, or a similar yield with a rational basis. The present base utilized could provide no reasonable insurance to West Central and unless the yield is ap-

propriately increased, you may consider this to be our cancellation of policy. We reserve our rights in the event our appeal presently pending in Washington results in a higher yield.

A Past Due Notice was sent to West Central on November 5, 1991 which stated in part:

This is the last notice you will receive before your policy terminates for debt. If your policy terminates, you will not be eligible to participate in the crop insurance program for the coming year.

The only exception that will prevent your policy from terminating is if you have a loss claim pending for which the indemnity payment is large enough to cover this debt. Contact your local agent immediately if you have questions.

In response to West Central's request to conditionally terminate its insurance, NAU sent a letter to West Central dated November 14, 1991. The letter stated that "The Federal Crop Insurance Corporation (FCIC) does not have a 'conditional' termination." NAU enclosed a document entitled Policy Changes and instructed West Central to have it signed by William Rasch in order to cancel the insurance coverage for the 1992 crop year. "[T]he cancellation must be signed by November 20, 1991, or your coverage will automatically renew for 1992."

On November 20, 1991, the date on which West Central's crop insurance coverage was set to terminate, West Central's attorney, David Anderson, sent a letter to NAU:

This will acknowledge the past due notice dated November 5, 1991. Be advised that there is a pending claim on behalf of West Central Packing for both low yield and their fresh fruit option, so payment will not be forthcoming per your communication.

West Central contends that this letter clearly advised NAU/Empire that it had a loss claim pending and that the indemnity payment would be large enough to pay the premium.

The Policy Declaration Page prepared by NAU and dated November 26, 1991, indicated that West Central's crop insurance had "been terminated due to unpaid premium."

On December 2, 1991, West Central's attorney sent a letter to NAU which stated:

This will acknowledge your phone message of November 29, 1991 indicating that you are terminating insurance for next year for non-payment. The communication you provided us indicated that if we had a claim, no payment need be made. We have checked with our agent, and believe we are the only entity being treated in this manner. Please acknowledge you will not go forward in this obvious bad faith.

West Central's 1991 crop loss claim was pending until January 30, 1992, at which time a $12,901.00 credit was issued. The Premium Due Notice dated February 1, 1992, reflects the $12,901.00 credit given to West Central for its claim. The credit reduced West Central's original premium to $63,868.50. West Central contends that this was its first notice that the claim amount was less than the premium due but that by this time the policy had already been canceled. The Premium Due Notice contained a paragraph which dealt with indemnity credits.

CREDIT FROM INDEMNITY PAYMENT—In compliance with the Federal Crop Insurance Corporation's rules and regulations, if you have an indemnity due, your indemnity payment will be applied toward your account balance. Interest charges applied to your account will be deducted from the indemnity payment up to the date you signed your loss claim. Interest charged after the signature date of your claim will be removed from your account. When the indemnity due cannot offset all premium and interest owed, interest will be charged on the principal balance remaining after the indemnity payment is credited to the account. If it is determined that there is no indemnity due on a claim, premium and interest charges are owed as charged to the account and will not be adjusted.

## DISCUSSION

West Central contends that its crop insurance was wrongfully canceled by Empire and

therefore remained in effect through the 1992 crop year. West Central does not dispute that it failed to pay the insurance premiums. Rather, it argues that Empire should be estopped from canceling the insurance coverage because it urged West Central to ignore the premium notices if it had claims pending. West Central also contends that Empire waived its right to cancel West Central's policy due to non-payment of premiums.

The elements of promissory estopped are:
(1) a promise;
(2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee;
(3) which in fact produced reliance or forbearance of that nature; and
(4) in circumstances such that the promise must be enforced if injustice is to be avoided.

*Nygard v. Nygard,* 156 Mich.App. 94, 100, 401 N.W.2d 323, 327 (1986).

West Central also contends that Empire's actions constitute a waiver because its Notices stated they could be disregarded if there was a loss claim pending.

A waiver is the intentional relinquishment of a known right. It is predicated upon (1) knowledge of an existing right, and (2) actual intention to relinquish it, or conduct, action or inaction, warranting an inference of intention to relinquish it.

West Central insists that it was relying upon the notices it received from NAU when it failed to pay the premium due at the end of 1991. It cites *Spears v. Federal Crop Ins. Corp.,* 579 F.Supp. 1022 (E.D.Tenn.1984), *vacated,* 614 F.Supp. 540 (1985) to support its promissory estoppel theory.

In *Spears,* plaintiffs sued FCIC to recover under a crop insurance policy after their 1982 wheat crop was destroyed. FCIC argued that the plaintiffs' 1982 wheat crop was not covered. FCIC had terminated the plaintiffs' insurance because the 1981 premiums had not been paid. The plaintiffs in *Spears* argued that they failed to pay their wheat crop premiums by the October 10, 1981, deadline because an FCIC agent informed them that their wheat premiums would be deducted from their corn and soybean indemnities. Plaintiffs received several warnings about the premium, including a notice that the policy had been terminated. However, plaintiffs contacted the FCIC agent and each time were assured that their pending indemnity claim was sufficient to cover the wheat premiums. The agent also informed them that their wheat insurance would continue despite the termination notices. *Id.* at 1023–24.

The *Spears* case was tried without a jury. The court concluded that the plaintiffs' failure to pay the 1981 wheat premium terminated the policy. Nevertheless, the court found that the plaintiffs' failure to pay the premium resulted from their reasonable reliance upon the misrepresentations of the FCIC agent. Therefore, FCIC was equitably estopped from enforcing the termination provisions of the policy. *Id.* at 1024.

West Central's Brief in Support of its Motion for Partial Summary Judgment states that like the plaintiffs in *Spears,* it "contacted the agent, who assured them that their pending indemnity claim would preclude termination." West Central's brief at p. 6. At oral argument this Court noted that it had difficulty finding support for this assertion in the record. West Central's attorney stated it was his recollection that the deposition testimony of Ms. Sheri Vergot and Mr. Larry Rank would support this statement. Because the deposition transcripts were not readily available at the hearing, the Court permitted West Central to submit a supplemental brief. In its supplemental memorandum West Central states that the depositions provided no information about the matter. However, West Central submitted the affidavits of Ms. Vergot and Mr. Rank. The affidavits allegedly establish that like the agent in *Spears,* "agent Rank assured West Central that its pending indemnity claim was sufficient to cover the 1991 premiums and that West Central's crop insurance would continue through the 1992 crop year despite the termination notices mailed to West Central by NAU." West Central's Supplemental Memorandum at p. 2.

The affidavit of Mr. Rank, the insurance agent who sold West Central the policy, stated that on or about October 29, 1991, he assured Ms. Vergot that West Central could withhold payment because it had claims in excess of the premium being billed. Rank affidavit at para. 3. His affidavit also states, "I assured Ms. Vergot repeatedly that West Central's pending claims for 1990 and 1991 would exceed the premium being billed for 1991." Rank affidavit at para. 7. Ms. Vergot's affidavit states that Mr. Rank assured her that West Central's apple crop insurance would continue despite the termination notices. Vergot affidavit at para. 6.

Empire argues that West Central can not ignore the clear and unambiguous language of the insurance contract. The contract called for payment of the premium unless the pending claims would exceed the premium owed. Empire contends that on November 20, 1991, the date the premium was due, there was no loss claim pending which would have paid the debt. The 1990 loss claim had already been adjusted. Based upon the approved yield used in 1990, it was apparent that the 1991 loss claim would be significantly less than the $74,743.76 premium and interest payment which was then due. Empire argues that agent Rank's advice that the insurance would continue despite the termination notices offers no legal basis to negate the unambiguous language of the insurance contract. Indeed, the 1991 loss was adjusted on January 30, 1992, for just $12,901.00. Empire acknowledges that West Central had appealed the approved yield figure used in adjusting the claim but contends that an appeal does not constitute a loss claim.

This Court finds that there are genuine issues of fact concerning cancellation of the policy including whether West Central's reliance upon Mr. Rank's statements was reasonable in light of the language of the insurance contract. These issues preclude this Court from granting the motion for summary judgment. Accordingly, West Central's motion for partial summary judgment will be denied.